WILDWOOD INDUSTRIES, Plaintiff-Appellant, v. ILLINOIS HUMAN RIGHTS COMMISSION *et al.,* Defendants-Appellees.—WILDWOOD INDUSTRIES, Plaintiff-Appellant, v. ILLINOIS HUMAN RIGHTS COMMISSION *et al.,* Defendants-Appellees.

Fourth District   No. 4—90—0853

Opinion filed October 4, 1991.

McCULLOUGH, J., dissenting.

J. Reed Roesler, of Keck, Mahin & Cate, of Peoria, and Don C. Hammer, of Hayes, Schneider, Hammer, Miles & Cox, of Bloomington, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellee Human Rights Commission.

George F. Taseff, of Bloomington, for other appellees.

Carey Cosentino, of Kemp & Capanna, Ltd., of Oak Brook, and Rosalyn C. Lieb and Cynthia Wilson, both of Chicago Lawyers' Committee for Civil Rights Under Law, Inc., Randall D. Schmidt, of Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School, and Stephen Stern, of Legal Assistance Foundation of Chicago, all of Chicago, as *amici curiae.*

JUSTICE GREEN delivered the opinion of the court:

Defendants Debra Borling and Mary Schoultz filed charges with defendant Illinois Department of Human Rights (Department) on February 6, 1988, and February 29, 1988, respectively, alleging their employer, plaintiff Wildwood Industries (Wildwood), committed acts of sexual harassment and sex discrimination in violation of sections 2—102(A) and (D) of the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1987, ch. 68, pars. 2—102(A), (D)). On May 18, 1990, and March 22, 1990, respectively, the Department filed corresponding complaints against Wildwood with the Illinois Human Rights Commission (Commission). Thus, more than two years elapsed between the filing of charges by the complainants and the Department's filing of complaints with the Commission.

In July 1990, Wildwood filed with the Commission motions to dismiss the complaints on the grounds that the complaints were untimely filed. Both of Wildwood's motions were denied. On September 19, 1990, Wildwood filed two complaints in the circuit court of McLean County challenging the Commission's exercise of jurisdiction over the complaints filed by the Department. Wildwood subsequently filed a petition for a preliminary injunction and supporting memorandum of law. Wildwood maintained the Commission lacked jurisdiction because the complaints filed by the Department were not filed within 300 days of the filing of the charges with the Department as required by section 7A—102(G)(1) of the Act (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G)(1)).

Pursuant to a stipulated order, the two cases were consolidated on November 21, 1990, and on that same date, a motion to dismiss was filed on behalf of Borling and Schoultz. Although the propriety of the circuit court's proceeding in this matter is not raised by either party, we note that "[w]here an administrative agency's power to proceed is attacked on the ground that the agency lacks jurisdiction, the courts will entertain a complaint for injunction." (*Riggins v. Board of Fire & Police Commissioners* (1982), 107 Ill. App. 3d 126, 129, 437 N.E.2d 327, 328.) Following a hearing on the motion to dismiss and the petitions for preliminary

injunction, the court entered an order granting defendants' motion to dismiss and denying Wildwood's petitions. Plaintiff appeals. We affirm.

■ ■ The Act was enacted, *inter alia*, to protect individuals from sexual harassment in employment and from unlawful discrimination because of sex. (Ill. Rev. Stat. 1989, ch. 68, pars. 1—102(A), (D).) The Act allows a person who believes he or she has been a victim of prohibited discrimination 180 days after the date that a violation was allegedly committed to file a charge with the Department. (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(A)(1).) The Department then conducts a full investigation of the allegations set forth in the charge. The Act further provides:

"(G) Time Limit. (1) When a charge of a civil rights violation has been properly filed, the Department, *within 300 days thereof or within any extension of that period agreed to in writing by all parties*, shall either issue and file a complaint in the manner and form set forth in this Section or shall order that no complaint be issued. Any such order shall be duly served upon both the complainant and the respondent.

(2) *Within 30 days of the expiration of the 300-day period or such longer period as shall have been agreed upon pursuant to subparagraph (1), the aggrieved party may file a complaint with the Commission, if the Department has not sooner filed a complaint or ordered that no complaint be issued.* The form of the complaint shall be in accordance with the provisions of paragraph (F). The aggrieved party shall notify the Department that a complaint has been filed and shall serve a copy of the complaint on the Department on the same date that the complaint is filed with the Commission. Upon such notice, the Department shall cease processing the charge.

(3) *Unless and until the aggrieved party files a complaint with the Human Rights Commission pursuant to paragraph (2) of this subsection, the Department shall continue its investigation and conclude it with the greatest promptness* that is administratively feasible." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G).

■ Section 7A—102(B) of the Act (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(B)) requires that within 10 days of receiving a charge, the Department shall send a notice to the complainant which de-

scribes the complainant's right to file a complaint with the Commission as described above.

Plaintiff maintains on appeal that the 300-day time limit within which the Department is required to prepare a complaint or order that no complaint be issued, together with the 30-day "window" within which the aggrieved party may file a complaint with the Commission, is a mandatory requirement. It contends that the trial court erred in holding, implicit in its dismissal of the complaint, that the jurisdiction of the Commission extended to complaints filed by the Department beyond 300 days of the date the complainant had presented a charge to the Department even where, as here, no extensions of the 300-day limit had been agreed upon.

The Act was enacted as the successor to the Fair Employment Practices Act (FEPA) (Ill. Rev. Stat. 1977, ch. 48, par. 851 *et seq.*), which provided as follows for a 180-day filing period:

"Whenever such a charge of an unfair employment practice has been properly filed, the [Fair Employment Practices] Commission [(FEPC)], within 180 days thereof or within any extension of that 180 day period agreed to in writing by all parties and approved by a member of the Commission, shall either issue and serve a complaint in the manner and form set forth in this Section or shall order that no complaint be issued." (Ill. Rev. Stat. 1977, ch. 48, par. 858.01(a).)

The Illinois Supreme Court held this 180-day period requirement, although not jurisdictional in the sense it could not be waived, was a limitation which imposed a mandatory time within which a complaint could issue by the FEPC. (*Springfield-Sangamon County Regional Planning Comm'n v. Fair Employment Practices Comm'n* (1978), 71 Ill. 2d 61, 68, 373 N.E.2d 1307, 1310.) The court noted that such time periods are considered directory "only where the rights of the parties are not injuriously affected by the failure to act within the time indicated." *Springfield-Sangamon*, 71 Ill. 2d at 68, 373 N.E.2d at 1310.

The supreme court determined that the remedial and reconciliatory procedures upon which the FEPA was based would be hampered by periods of inaction by the FEPC, and an extended delay in the complaint-filing process would increase the financial burden on the employer. (*Springfield-Sangamon*, 71 Ill. 2d at 68, 373 N.E.2d at 1310.) In *Board of Governors v. Illinois Fair Employment Practices Comm'n* (1979), 78 Ill. 2d 143, 149, 399 N.E.2d 590, 593, the court again stated that the legislative intent in drafting the FEPA

was that the complaint be filed within 180 days of the charge, absent an extension of that period agreed to in writing by all parties.

Following the court's determination in *Springfield-Sangamon* regarding legislative intent, the legislature removed the 180-day language from section 8.01(a) of the FEPA (procedures—complaint, answer, hearing and order), and amended section 8 (procedures—charge, investigation, conference, settlement, and adjustment) to provide the FEPC a 300-day limitations period, *i.e.*, 120 days for a fact-finding conference in subsection (b), and 180 days thereafter or as otherwise extended as authorized in subsection (d). Pub. Act 80—1452, eff. Sept. 16, 1978 (1978 Ill. Laws 1731, 1732-34) (amending Ill. Rev. Stat. 1977, ch. 48, pars. 858.01(a), 858); see also Ill. Rev. Stat. 1979, ch. 48, pars. 858.01(a), 858(b), (d).

A week thereafter, the legislature passed section 8.01a of the FEPA (see Ill. Rev. Stat. 1979, ch. 48, par. 858.01a) purporting to create a circuit court cause of action for those claimants who had filed charges with the FEPC prior to March 30, 1978, and whose rights to recover under the FEPA were lost by administrative delay. Pub. Act 80—1455, eff. Sept. 16, 1978 (1978 Ill. Laws 1740, 1747).

In November 1979, the General Assembly enacted the Act, incorporating the 300-day language as the time limit in section 7—102(G). Pub. Act 81—1216, eff. July 1, 1980 (1979 Ill. Laws 4854, 4869, 4893).

In *Wilson v. All-Steel, Inc.* (1981), 87 Ill. 2d 28, 40-41, 428 N.E.2d 489, 494, the Illinois Supreme Court determined that section 8.01a of the FEPA, purporting to create a circuit court cause of action for a certain group of complainants, was unconstitutional because it denied respondent employers both equal protection and due process. The court noted the reason for holding the filing period mandatory rather than directory in earlier cases was that the legislature was seeking to balance the rights of an aggrieved individual, who had allegedly suffered discrimination, against the rights of those charged under the FEPA to have a prompt determination of the validity of the claim lodged against them. The court then noted that under the new Act claims were not barred until 300 days (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—102(G)), rather than 180 days, after the charge was filed. *Wilson*, 87 Ill. 2d at 37-38, 428 N.E.2d at 492-93.

Following *Wilson*, the United States Supreme Court held that under the Illinois FEPA, a complainant who had timely filed a charge with the State under the FEPA had a property interest in the statutory procedures provided for redressing discrimination vio-

lations and could not be deprived of the opportunity to have their charges heard simply because of a State agency's failure to meet a filing deadline. (*Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 431, 71 L. Ed. 2d 265, 275, 102 S. Ct. 1148, 1155.) An Illinois appellate court then determined in *Franks v. Tucker* (1985), 132 Ill. App. 3d 455, 460-61, 476 N.E.2d 1315, 1319, that the supreme court's holding in *Springfield-Sangamon* was overturned by *Logan*, and applied *Logan* to cases brought under the Act. The *Franks* court concluded the 300-day time limit had become directory, not mandatory.

Subsequent to *Logan*, in 1985 the General Assembly amended the Act to add section 7—102(G)(2), designating prior section (G) language as subsection (1) and adding subsection (2), which granted aggrieved parties the opportunity to themselves file complaints with the Commission "[w]ithin 30 days of the expiration of the 300-day period" or a longer period if agreed upon (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(G)(2) (now section 7A—102(G)(2) (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G)(2)))); and added the corresponding language in section 7—102(B) of the Act (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(B)) (now section 7A—102(B)), directing the Department to notify complainant of his option to file a complaint with the Commission, including the dates within which he or she could exercise the option. (Pub. Act 84—445, eff. Sept. 16, 1985 (1985 Ill. Laws 2989, 2991).) (The sections of article 7 of the Act were reenacted under article 7A of the Act by Public Act 86—910, effective September 11, 1989 (1989 Ill. Laws 5185, 5192-96).)

In 1987, the legislature further amended the Act, *i.e.*, sections 7—102(B), (C)(4), and—most significant to the inquiry before us—(G)(3) (Ill. Rev. Stat. 1987, ch. 68, pars. 7—102(B), (C)(4), (G)(3) (now Ill. Rev. Stat. 1989, ch. 68, pars. 7A—102(B), (C)(4), (G)(3))), to add procedures for (1) additional pleadings; (2) a fact-finding conference if certain findings have not been made by 210 days after the charge is filed; and (3) *continued investigation by the Department unless an aggrieved party has filed a complaint within the above-described 30-day period of section 7—102(G)(2).* (Pub. Act 85—825, §1, eff. Sept. 24, 1987 (1987 Ill. Laws 3436, 3436-39).) Section 7—102(G)(3) is now section 7A—102(G)(3).

In the *Logan* opinion, the United States Supreme Court had stated it did not intend to indicate that a State agency must "consider the merits of the claim when the *claimant* fails to comply with a reasonable procedural requirement." (Emphasis in original.) (*Logan*, 455 U.S. at 434 n.7, 71 L. Ed. 2d at 277 n.7, 102 S. Ct. at

1157 n.7.) Accordingly, both plaintiff and *amicus curiae*, On-Line Financial Services, Inc., maintain that the 30-day period of section 7A—102(G)(2) of the Act appears to give an aggrieved party a reasonable opportunity to proceed on whatever claim he or she may have, thus affording that party due process and giving validity to the obvious original legislative intent that the 300-day limitation of 7A—102(G)(1) of the Act is an absolute bar to filing a complaint absent written agreement of the parties.

Plaintiff's contention is very reasonable on its face. Nevertheless, we conclude that the history of the operation of the Act and its predecessor, the FEPA, together with the combined effect of sections 7A—102(G)(2) and (G)(3) of the Act, indicates the legislature did not intend that the 300-day limitation of section 7A—102(G)(1) have the same mandatory effect it had prior to *Logan*. The legislation struck down in *Wilson*, purporting to create a court action as a remedy under FEPA, indicated a legislative desire to create a way for complainants whose charges had not been processed to proceed on their own. The *Franks* court stated that at the time of its opinion, "approximately 600 cases older than 300 days were then pending in the Department." (*Franks*, 132 Ill. App. 3d at 460, 476 N.E.2d at 1319.) That opinion was filed in March 1985, near the time of the enactment of section 7—102(G)(2) creating the present right of a complainant to file with the Commission. In the face of that backlog, the legislature had incentive to again attempt to create a procedure for complainants to file with the Commission without necessarily intending for the legislation to correct the condition which, under *Logan*, required the 300-day period of limitation be treated as merely directory.

Thus, upon the enactment of section 7—102(G)(2) (now section 7A—102(G)(2)) and before the enactment of section 7—102(G)(3) (now section 7A—102(G)(3)), the status of the 300-day limitation was uncertain. Section 7—102(G)(2) and the portions of section 7—102(B) of the Act requiring the Department to give those filing charges notice of their rights under section 7—102(G)(2) were created by Senate Bill 1391, which became Public Act 84—445. The record of official proceedings in regard to that legislation contains the following comments by legislators:

> "[T]hat the department, when it ... when a person files a complaint before the department it shall notify them of this option they have that within three hundred days of the expiration ... I mean, within thirty days of the expiration of the three hundred-day period the complainant can opt to file ...

refile his complaint with the Human Rights Commission instead of the department." (84th Ill. Gen. Assem., Senate Proceedings, May 20, 1985, at 134-35 (statements of Senator D'Arco).)

"[W]hen a complainant files a complaint before the Department of Human Rights, at the expiration of the three hundred day period if they haven't acted on the complaint, he can file that complaint with the Commission of Human Rights as long as he receives a notice when he initially files the complaint from the department." (84th Ill. Gen. Assem., Senate Proceedings, May 24, 1985, at 146-47 (statements of Senator D'Arco).)

"Senate Bill 1391 essentially cures a problem that's cropped up in the Department of Human Rights wherein cases are allowed ... cases which find themselves backlogged beyond 300 days, there is no recourse for the aggrieved individual. This Bill will essentially call for a bumping up to the Human Rights Commission of cases that are more than 300 days old." 84th Ill. Gen. Assem., House Proceedings, June 21, 1985, at 140 (statements of Representative Braun).

Neither legislator indicated that the purpose of the legislation was to restore the 300-day limitation to its former mandatory status. Braun mentioned a backlog of cases which the legislation was designed to alleviate. She also stated that "beyond 300 days, there is no recourse for the aggrieved individual." This would indicate she understood the 300-day limitation was mandatory absent agreement of the parties. Both legislators indicated the window period of section 7—102(G)(3) was to begin with the expiration of the 300-day period. As we later explain, the question as to the beginning of the period when complainants may file is of some significance.

No legislative history exists as to the opinions of the legislators voting on the bill which became section 7—102(G)(3) of the Act (Pub. Act 85—825, §1, eff. Sept. 24, 1987), now section 7A—102(G)(3), and which provides "the Department shall continue its investigation and conclude it with the greatest promptness." (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G)(3).) However, we find the effect of this legislation on the operation of the rest of section 7—102(G) of the Act, now section 7A—102(G), persuasive in respect to the legislature's latest intent as to the operation of the 300-day limitation period.

Section 7A—102(G)(2) is ambiguous as to whether the phrase "[w]ithin 30 days of the expiration of the 300-day period" refers to

a time (1) beginning 30 days before the expiration of the 300-day period and ending at the expiration of that period, (2) beginning 30 days before the expiration of the 300-day period and ending 30 days after the expiration of the 300-day period, or (3) beginning at the expiration of the 300-day period and extending 30 days thereafter. Section 7A—102(G)(3) requires that "[u]nless and until" a complaint is filed by a complainant, "the Department shall continue its investigation and conclude it with the greatest promptness." Regardless of the determination of when the period for the complainant's filing begins, that subsection is inconsistent with the 300-day limitation being mandatory absent contrary written agreement.

As we have noted, both Senator D'Arco and Representative Braun spoke of the window period of section 7—102(G)(2), now section 7A—102(G)(2), as beginning at the end of the 300-day period. Any construction of that subsection which extends the period for complainant filing beyond the end of the 300-day period requires the Department, absent such a filing, to continue its investigation beyond the end of the 300-day period. If that period creates a mandatory limitation upon the Department filing with the Commission, the investigation required would be useless. Plaintiff concedes the legislature would not have intended such a construction but strongly urges that the period for filing by complainants was intended to exist for a period of 30 days prior to the expiration of the 300-day period.

■■ Even giving plaintiff's interpretation to section 7A—102(G)(2) as to the "window" period, the relationship between the two subsections is most awkward if the 300-day limitation is mandatory. If no complaint was filed, the Department would be required to investigate up to the end of the 300-day period and then close its investigation "with the greatest promptness" even though the investigation could not be used. If the 300-day limitation were intended to be mandatory, the legislature would have directed the Department to investigate until the end of the 300-day period unless the investigation could be sooner concluded. Regardless of when the "window" period was intended to end, the language of section 7A—102(G)(3) indicates the Department is to continue its investigation beyond the end of the 300-day period. This is inconsistent with an intent that the 300-day limitation be mandatory because it envisions a use for the reports of the investigations after the end of the 300-day period even when that period has not been extended by consent.

We hold that the 300-day limitation period of section 7A—102(G)(1) of the Act is not mandatory. Plaintiff had no grounds for injunctive relief here. The circuit court of McLean County properly denied injunctive relief. We affirm the order denying such relief.

Affirmed.

STEIGMANN, J., concurs.

JUSTICE McCULLOUGH, dissenting:

The charges were filed with the Department on February 8, 1988, and February 29, 1988. The Department filed the complaints on May 18, 1990, and March 22, 1990. The complaint as to Borling was filed 831 days after the charge was first filed. As to Schoultz, the complaint was filed 751 days after the charge was filed with the Department.

The procedures set forth in section 7A—102 of the Act, as applied to the instant case, do not appear complicated. The aggrieved party files a charge with the Department within 180 days (subsection (A)(1)); the Department gives notice of the charge to respondent within 10 days (subsection (B)); the Department, also within 10 days of the date the charge is filed, "send[s] written notice to the complainant informing the complainant of his or her option to file a complaint with the Human Rights Commission under subparagraph (2) of paragraph (G), including in such notice the dates within which the complainant may exercise such option." Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(B).

The aggrieved party is not only accountable to know the limitations of subsection (G), the Department is also required to send notice of its limitations to him or her. If the aggrieved party files a complaint with the Commission, section 7A—102(G)(2) of the Act also provides the aggrieved party shall notify the Department that a complaint has been filed and "[u]pon such notice, the Department shall cease processing the charge." (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G)(2).) Subsection (G)(3) is merely a follow-up directing the Department to continue its investigation unless and until the aggrieved party has filed his or her complaint pursuant to subsection (G)(2).

Section 7A—102(G) of the Act sets the parameters within which the complaint must be filed. As stated in *Springfield-Sangamon* (71 Ill. 2d at 68, 373 N.E.2d at 1310), time periods are considered di-

rectory "only where the rights of the parties are not injuriously affected by the failure to act within the time indicated."

Subsection (3) does not require a different interpretation of section 7A—102(G) as a whole. The majority's analysis as to subsection (G)(3) emasculates the balance of section 7A—102(G) of the Act and renders subsection (G)(1) meaningless. The asserted ambiguity in subsection (G)(2) does not require a different result. Twenty-nine days before the expiration of 300 days and 29 days after the expiration of 300 days are "[w]ithin 30 days of the expiration of the 300-day period." Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G)(2).

Section 7A—102(G)(3) of the Act permits a continued investigation *"[u]nless and until* the aggrieved party files a complaint with the Human Rights Commission pursuant to paragraph (2)." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G)(3).) The word "[u]nless" cannot be read in isolation. "Unless and until" must be read together. As the injured party has 30 days within the expiration of the 300-day period, subsection (G)(3) cannot be an extension of the Department's prerogative beyond that date. "Until" authorizes and limits the investigation to continue to a maximum of 330 days or the date the aggrieved party files a complaint, whichever is sooner. Section 7A—102(G)(2) provides when the Department receives notice that a complaint has been filed by the aggrieved party, it "shall cease processing the charge."

This reasoning is consistent with *Logan.* The 30-day window period gives the aggrieved party the opportunity to file a complaint when the Department fails to meet the filing deadline. To remove all time limits, as the majority suggests, will impose severe hardships on respondents and aggrieved parties alike.

The circuit court properly exercised jurisdiction. The petitioner's prayer for injunction should have been granted.