BARBARA A. McGAUGHY, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION et al., Respondents-Appellees.

Third District   No. 3—92—0571

Opinion filed April 23, 1993.

Shawn M. Collins, of Chicago, for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and John P. Schmidt, Assistant Attorney General, of Chicago, of counsel), for respondents.

JUSTICE STOUDER delivered the opinion of the court:

The petitioner, Barbara McGaughy, filed racial discrimination charges with the Department of Human Rights (the Department). Those charges were dismissed after an investigation determined that there was a lack of substantial evidence supporting the charges. The

petitioner requested review by the Human Rights Commission (the Commission), which affirmed the dismissal. The petitioner filed a petition for rehearing before the entire Commission. Following a denial of that petition, the petitioner sought review of the Commission's order pursuant to section 8—111 of the Illinois Human Rights Act (the Act) (775 ILCS 5/8—111 (West 1992)). On appeal, the petitioner argues that the decision of the Commission is legally erroneous and against the manifest weight of the evidence in that the Illinois State Police disciplined her more harshly than a similarly situated white male and that the State Police premised their discipline of her upon past criminal conduct which was isolated, remote in time, and unrelated to her present or future ability to perform her duties. The respondents, the Commission and the Illinois State Police, challenge this court's subject-matter jurisdiction, citing the petitioner's failure to name the Department as a respondent within 35 days of the Commission's final order.

The petitioner filed an employment discrimination claim with the Department on October 5, 1988. The petitioner alleged racial discrimination on the part of the State Police. The State Police hired the petitioner as a temporary data input operator in March 1986. She was scheduled to begin on a permanent basis on August 8, 1988. The petitioner stated that the reason given for her discharge was that she had falsified information in her employment application. The petitioner believed that she had been discriminated against because of her race for the following reasons: (1) white female employees who were also hired as data input operators were given supervisory positions over the black female employees and black employees were sometimes discharged to keep white employees in their positions; (2) the State Police did a background check of the petitioner in 1986 and found no criminal history, but then did a more thorough background check after a white employee asked the petitioner if she was related to someone who had been arrested on drug charges; (3) the background check turned up a municipal charge of battery in the City of Joliet in 1982 that, to the best of the petitioner's knowledge, did not result in a conviction for a felony or a misdemeanor; and (4) that any employment policy based on arrest records would have a disparate impact upon minorities because minorities are arrested at a higher rate than nonminorities.

The Department investigated the petitioner's claims and found a lack of substantial evidence to support the charges of discharge based on race and failure to hire based on race. The Department's investigation confirmed the petitioner's statement that she had been scheduled

to begin work as a permanent employee on August 8, 1988, but was discharged when a subsequent background check revealed that the petitioner had been charged with municipal battery in Joliet in 1982. A previous background check of the petitioner revealed no convictions. On the petitioner's employment application, she marked "no" to the question "Have you ever been convicted for other than minor traffic violations?" The State Police have a written policy of not hiring anyone who is convicted of, or pleads guilty to, a felony or a Class A or B misdemeanor. The petitioner claimed that she was not aware that her fine for a municipal ordinance violation constituted a "conviction." The State Police stated that her discharge was based on the false information on her employment application and her conviction of battery in 1982.

The petitioner provided the Department with the name of a white male co-worker, Ronald Babecki, whom the petitioner claimed was convicted of DUI and was still hired. The petitioner alleged that Babecki also marked "no" on his employment application to the question of whether he had been convicted of other than minor traffic violations. Steve Emberton, the legal advisor for the State Police, stated that the initial background check of Babecki revealed no convictions. Emberton stated that he was not sure if a municipal background check, similar to the one conducted on the petitioner, had been conducted on Babecki at his time of hire. Emberton further stated that the State Police did not consider DUI to be a "reportable offense."

Gary McAlvey, the chief of the State Police Bureau of Identification, stated that applicants with conviction records are not hired because the job entails securing criminal records and inputting criminal information into the computer system. McAlvey stated that the initial background check of the petitioner was an internal check and also an FBI fingerprint check. The subsequent background check included a search for municipal convictions.

The Department's investigation report concluded with a finding that there was a lack of substantial evidence to support the charges. The Department concluded that the petitioner was discharged because she falsified her employment application. The Department did not consider the information about Babecki to be particularly relevant because the only conviction Babecki had for DUI was when he was a minor. The record reflects that the DUI charge to which the petitioner referred ended in Babecki's being fined $500 and placed on court supervision. It is unclear from the record whether or not Babecki successfully completed his supervision. This violation occurred when Babecki was an adult.

On September 16, 1991, the petitioner filed a request to have the Commission review the Department's dismissal of her charges against the State Police. On May 4, 1992, the Commission issued an order upholding the Department's dismissal of the petitioner's claims. The petitioner filed a petition for rehearing with the Commission, which was denied on June 29, 1992. This appeal followed.

The respondents argue that we lack jurisdiction over this appeal because the petition for review failed to name the Department as a respondent. This argument is based on section 8—111(A)(1) of the Act, which provides that petitions for review from final orders of the Commission are to be governed by Supreme Court Rule 335 (134 Ill. 2d R. 335). Rule 335(a) states in part that, in a petition for review, "[t]he agency and all other parties of record shall be named respondents." (134 Ill. 2d R. 335(a).) Under section 8—103 of the Act, when the Commission reviews a Department decision to dismiss a charge, "the Department shall be the respondent." (775 ILCS 5/8—103(A) (West 1992).) The respondents claim that the supreme court's decision in *Lockett v. Chicago Police Board* (1990), 133 Ill. 2d 349, 549 N.E.2d 1266, wherein the court stated that the language of section 3—107 of the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—107) is clear in mandating that all parties of record be named as defendants in an administrative review action, is controlling on the facts of this case. The *Lockett* court found that the requirement that all parties of record be named defendants is "mandatory and specific, and admits of no modification." *Lockett*, 133 Ill. 2d at 354, 549 N.E.2d at 1268.

Recently, the Fourth District Appellate Court in *Parham v. Macomb Unit School District No. 185* (1992), 231 Ill. App. 3d 764, 596 N.E.2d 1192, considered the question of whether the failure to name both the Commission and the Department in a petition for review deprives the appellate court of subject-matter jurisdiction. The *Parham* court reached the following conclusion:

> "In construing provisions of Rule 335, the supreme court has determined the express incorporation of only sections 3—101, 3—108(c), 3—109, 3—110, and 3—111 of the Administrative Review Law [citation] excludes applicability of other provisions of that act. [Citation.] Therefore, the omission of sections 3—107 and 3—102 of the Administrative Review Law from the purview of Rule 335 precludes an application of the decisional analysis in *Lockett* to proceedings governed by provisions of Rule 335 on the facts of this case. Moreover, section 3—102 of the Administrative Review Law is specific in barring judicial re-

view except as provided therein. Rule 335, by contrast, contains no such specific bar and this court declines to give it such a construction on the facts of this case." *Parham*, 231 Ill. App. 3d at 768-69, 596 N.E.2d at 1195.

■ The court in that case did not have to reach the question of whether the failure to name the agency in the petition for review is a jurisdictional defect barring review because the petitioner filed an amended petition naming the Department and the Commission as respondents. On the facts of this case, we hold that the failure to name the Department as a respondent did not deprive this court of jurisdiction. Statutes giving the right to appeal are to be liberally construed, and an interpretation that will result in a forfeiture is not favored. (*Moenning v. Commonwealth Edison* (1985), 134 Ill. App. 3d 468, 481 N.E.2d 36.) The petitioner in this case, unlike the petitioner in *Parham*, named the Commission as a respondent in the petition for review; only the Department was omitted. The petition in all other respects complied with the requirements of Rule 335. Further, the Commission itself did not name the Department as a respondent in this matter. Both of the Commission's orders named only the Illinois State Police as the respondent, even though section 8—103 of the Act states that the Department should be the respondent. We believe that it would be inequitable to dismiss the petitioner's case for failure to name the Department as a respondent when the Commission itself did not name the Department as a respondent. The appeal was from an order of the Commission, named the Commission and the State Police as respondents, and complied with the requirements of Rule 335. We conclude that we have jurisdiction over this appeal.

On the merits, the petitioner argues that the decision of the Commission was legally erroneous and against the manifest weight of the evidence in that she was disciplined more harshly than a similarly situated white male and that the State Police premised her dismissal upon past criminal conduct unrelated to her present or future ability to perform her duties.

When reviewing a decision of the Human Rights Commission, a court should sustain the Commission's findings of fact as *prima facie* true and correct unless they are contrary to the manifest weight of the evidence. (*Freeman United Coal Mining Co. v. Human Rights Comm'n* (1988), 173 Ill. App. 3d 965, 527 N.E.2d 1289.) When the Commission affirms a dismissal of the charges based on the Department's investigative report, the standard of review is whether the dismissal was arbitrary, capricious, or an abuse of discretion. (*Parham*, 231 Ill. App. 3d 764, 596 N.E.2d 1192.) We have reviewed the record

under this limited standard of review and have determined that the Commission's affirmance of the Department's decision was an abuse of discretion. Both the Department and the Commission reached erroneous conclusions on the evidence presented. Under section 7A–102(D) of the Act (775 ILCS 5/7A–102(D) (West 1992)), the Department is required to determine if there is substantial evidence to support the charge that a civil rights violation has occurred. If the Department Director concludes there is not substantial evidence, the charges are dismissed. (775 ILCS 5/7A–102(D)(2)(a) (West 1992).) If it is determined there is substantial evidence to support the charge, a Department employee is designated "to endeavor to eliminate the effect of the alleged civil rights violation and to prevent its repetition by means of conference and conciliation." (775 ILCS 5/7A–102(D)(2)(b) (West 1992).) Because there was substantial evidence to support the petitioner's charges, those charges were erroneously dismissed and the Department should have followed the procedure set forth in section 7A–102(D)(2)(b).

A complainant in a proceeding under the Act has the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. In order to do so, the complainant must show the following: (1) she is a member of a group protected by the law; (2) she was treated in a certain manner by the employer; and (3) she was treated differently than similarly situated employees who are not members of the protected group. (*Warren Achievement Center, Inc. v. Human Rights Comm'n* (1991), 216 Ill. App. 3d 604, 575 N.E.2d 929.) The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the complainant's discharge. If the employer does so, the burden shifts back to the complainant to show that the reasons offered by the employer were merely pretexts for discrimination. *Freeman*, 173 Ill. App. 3d 965, 527 N.E.2d 1289.

The Department, in its investigative report, apparently reached the conclusion that the petitioner failed to establish a *prima facie* case of discrimination. The Department did not consider Babecki and the petitioner to be similarly situated because Babecki's only conviction for DUI occurred when he was a minor. The Department did not realize that Babecki had pled guilty to another charge of DUI when he was an adult, was fined $500 and placed on supervision. The Commission did have this information but, regardless, chose to affirm the Department's conclusions.

■ We have analyzed the situation considering all of the relevant evidence in the record and have determined that the petitioner and Babecki were similarly situated. The charges against both the peti-

tioner and Babecki were municipal charges. The petitioner was charged with battery by the City of Joliet, while Babecki was charged with DUI by the Village of Channahon. Nevertheless, Babecki's offense was more serious because a municipal conviction of DUI constitutes a conviction of a Class A misdemeanor. (See section 11—501(c) of the Illinois Vehicle Code (625 ILCS 5/11—501(c) (West 1992)): "every person convicted of violating this Section or a similar provision of a local ordinance, shall be guilty of a Class A misdemeanor.") The charge against the petitioner, however, was merely a charge of violating a local ordinance and did not rise to the level of a Class A misdemeanor. The distinction is important because the written policy of the State Police Bureau of Identification is to refuse to hire, or to discharge, any applicant or employee who is "convicted, pleads guilty, stipulates to the facts supporting the charge, or is found guilty of an offense, as defined in Chapter 38, Section 206—5, *Illinois Revised Statutes*." That section defines "offenses" as felonies and Class A and B misdemeanors. (See Ill. Rev. Stat. 1991, ch. 38, par. 206—5.) Conspicuously absent from this definition are municipal ordinance violations. We are now faced with a white male who pled guilty to a Class A misdemeanor and was still hired, and a black female who committed no offense as defined by the State Police policy and was discharged.

The respondents' ineffectual reply to this anomaly is that the petitioner committed a "reportable offense," while Babecki committed a "non-reportable offense." They rely on the same statute for this argument as was previously referred to for the definition of "offense." Section 5(a) of the Criminal Identification Act (Ill. Rev. Stat. 1991, ch. 38, par. 206—5) provides that all policing bodies of the State must furnish the State Police with information of persons arrested for various offenses. An exception is made for most moving or nonmoving violations of the Illinois Vehicle Code. Therefore, under this section, Babecki indeed did not commit a reportable offense. More importantly, neither did the petitioner. As previously mentioned, the reportable offenses are felonies and Class A or B misdemeanors. The respondents conclude that the petitioner committed a reportable offense because battery is a Class A misdemeanor. This would be true if the charge were a *State* charge of battery (see 720 ILCS 5/12—3 (West 1992)), but the petitioner was only charged with violating a provision of the code of ordinances of the City of Joliet. That the petitioner did not commit a reportable offense is further obviated by the fact that the background check of the records of the State Police uncovered no convictions. The petitioner established a *prima facie* case of race discrim-

ination in that she was discharged while a similarly situated white male was not.

The State Police's attempt to articulate a nondiscriminatory reason for the discharge was the assertion that the petitioner falsified her employment applications when she marked "no" to the question "Have you been convicted for other than minor traffic violation?" The petitioner explained that she did not understand that paying a fine for a municipal ordinance violation constituted a conviction. This testimony was considered irrelevant by the Department and the Commission. However, it seems apparent to us that the petitioner was not lying when she answered the question in the negative. Proceedings for violations of municipal ordinances are treated as civil matters governed by the Illinois Code of Civil Procedure, as long as the range of penalties for such violations does not include a term of imprisonment. (*City of Park Ridge v. Larsen* (1988), 166 Ill. App. 3d 545, 519 N.E.2d 1177.) A violation of the battery provision of Joliet's ordinance carries a maximum penalty of a fine of $500. (See Joliet, Ill., Code of Ordinances, §§1—8, 21—2, 21—9 (1988).) Although the term "conviction" is sometimes given a broad meaning, it is really a misnomer when applied to civil proceedings. The popularly understood meaning of "conviction" relates to criminal proceedings. (See Black's Law Dictionary 301 (5th ed. 1979) ("In a general sense, the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged").) There was no evidence that the petitioner was lying when she answered the inquiry in the negative. It was perfectly reasonable for her to believe that paying a fine in a civil proceeding did not amount to a conviction.

Further, as already demonstrated above, the petitioner did not even commit what the State Police Bureau of Identification considered to be a reportable offense. The type of "conviction" received by the petitioner was not of the type that would prevent her from being employed by the State Police. The policy was only to discharge those who were convicted of or pled guilty to felonies or Class A or B misdemeanors. The petitioner was not convicted of an offense as defined by the Bureau's own policy. The respondents would have us believe that the petitioner should be discharged for saying that she was not convicted of an offense, when their own policy did not consider her behavior to be an offense. The State Police failed to articulate a legitimate, nondiscriminatory reason for the petitioner's discharge.

For the reasons stated, we find that the Department erroneously concluded that there was not substantial evidence to support the petitioner's charges. Therefore, the Commission's decision to affirm the

Department's findings was an abuse of discretion. The Commission's order is vacated and the cause is remanded to the Commission for further proceedings consistent with the views expressed in this opinion.

Vacated and remanded.

McCUSKEY, P.J., and BRESLIN, J., concur.