ROBERT LIPSEY, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMIS-SION et al., Respondents-Appellees.

First District (5th Division) No. 1—91—2626

Opinion filed October 14, 1994.—Rehearing denied November 30, 1994.

Robert Lipsey, of Chicago, appellant *pro se.*

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Robert G. Toews, Assistant Attorney General, of counsel), for appellees.

JUSTICE GORDON delivered the opinion of the court:[1]

BACKGROUND

On September 5, 1978, petitioner, who was employed as an assistant planner by respondent, Chicago Cook County Criminal Justice Commission (CCCCJC), from mid-1977 until April 1978, filed a charge

---

[1]In order to comply with the appellate court page limitations specified by revised Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, effective July 1, 1994), portions of this decision have been abridged and deleted for purposes of publication. The entire unabridged decision is contained in the Rule 23 order filed with the clerk of this court in the cause of *Lipsey v. Human Rights Comm'n,* No. 1—91—2626.

with the Fair Employment Practices Commission alleging that his termination resulted from unlawful racial discrimination. On January 31, 1982, while the matter was pending, the CCCCJC ceased operations.[2] It appears from the record that the case proceeded against the CCCCJC and that the CCCCJC continued to be represented by the corporation counsel for the City of Chicago.

On April 5, 1982, an administrative law judge of the Human Rights Commission (the HRC), the agency which succeeded the Fair Employment Practices Commission, issued her "Recommended Order and Decision" which found in favor of petitioner. This determination was subsequently reversed by the Human Rights Commission, which dismissed petitioner's complaint with prejudice, and the circuit court affirmed. This court reversed the Human Rights Commission in *Lipsey v. Human Rights Comm'n* (1987), 157 Ill. App. 3d 1054, 510 N.E.2d 1226, finding that the decision of the Human Rights Commission was against the manifest weight of the evidence. The cause was remanded to the circuit court and to the Human Rights Commission for further proceedings.

Upon remand, on April 11, 1988, the petitioner filed a motion to substitute the City of Chicago (City) and the County of Cook (County) as respondents for the then-defunct Chicago Cook County Criminal Justice Commission. This motion was granted, and on June 13, 1988, an amended complaint was filed. Both the City and the County filed motions to dismiss, and on February 2, 1989, the HRC granted the

---

[2]There is some dispute as to when petitioner became aware of the fact that the CCCCJC had been dissolved. In his motion to substitute the City of Chicago and County of Cook, petitioner claimed that he did not become aware until February 26, 1988, after the first appeal, reversal and remand to the Human Rights Commission. On that date, the first deputy corporation counsel for the City of Chicago, who had represented the CCCCJC throughout the proceedings, had written to petitioner's counsel in response to the latter's offer of settlement. In that letter, CCCCJC's counsel refused to consider reinstatement or back pay subsequent to January 31, 1982, since "the agency *** was abolished in 1982."

The record shows that the petitioner had knowledge as early as June 10, 1982, that the CCCCJC had been abolished. In its motion for leave to file documents in supplement to its motion to withdraw as counsel for the CCCCJC, filed with the Human Rights Commission on July 26, 1989, the corporation counsel attached certified copies of its notice of filing, certificate of service and "Pretrial Compliance" pleading that had been filed on June 10, 1982, in a related matter pending in the Federal court. The latter document included in its "Proposed Statement of Facts" that "[t]he Commission was dissolved effective February 1, 1982." (The motion to withdraw as counsel to the CCCCJC was denied.)

motions, dismissed the City and County, and reinstated the CCCCJC as the sole party respondent.

The matter was then remanded by the HRC to an administrative law judge who, in an order dated September 18, 1990, recommended that the petitioner receive $72,821.17 in back pay. This award covered the period of April 14, 1978, the date petitioner was discharged, through January 31, 1982, the date the CCCCJC ceased operation. The petitioner did not receive back pay for the period after the CCCCJC was dissolved. The administrative law judge also recommended that petitioner receive $21,500 in attorney fees and determined that reinstatement was not a proper remedy because the CCCCJC no longer existed. These recommendations were adopted in full by a three-member board of the Human Rights Commission on April 12, 1991.

Petitioner's petition for rehearing before the Human Rights Commission was denied on July 22, 1991. On August 16, 1991, the petitioner filed a petition for review in the appellate court naming the Chicago Cook County Criminal Justice Commission as the sole party respondent. The petitioner did not name the Human Rights Commission as a party respondent in his petition for review.

On September 30, 1991, the Human Rights Commission filed a motion to dismiss the instant appeal arguing that petitioner's failure to name the Human Rights Commission, the administrative agency from whose order the appeal was being taken, deprived the appellate court of jurisdiction. On October 4, 1991, petitioner filed a motion to amend the caption of his petition. These motions were taken with the case.[3]

OPINION

On appeal, petitioner contends that the Human Rights Commission erred in dismissing the City of Chicago as a party respondent and in finding that the City was not the successor to the Chicago Cook County Criminal Justice Commission. Before we can address petitioner's contentions on the merits, however, we must determine whether the petitioner properly invoked the appellate jurisdiction of this court. The HRC contends that this court lacks jurisdiction to hear this matter because the petitioner failed to name the Human Rights Commission as a party respondent in his petition for review.

Section 8—111(A)(1) of the Illinois Human Rights Act (Ill. Rev.

---

[3]The Human Rights Commission filed the only respondent brief in this appeal. The Chicago Cook County Criminal Justice Commission was granted leave to join in this brief.

Stat. 1989, ch. 68, par. 8—111(A)(1) (now 775 ILCS 5/8—111(A)(1) (West 1992))) sets forth the proper procedure for obtaining judicial review of an order of the Human Rights Commission. It states in relevant part:

"Any complainant or respondent may apply for and obtain judicial review of a final order of the Commission entered under this Act by filing a petition for review in the Appellate Court within 35 days after entry of the order of the Commission, in accordance with Supreme Court Rule 335."

Illinois Supreme Court Rule 335 provides in relevant part:

"The procedure for a statutory direct review of orders of an administrative agency by the Appellate Court shall be as follows:

(a) The Petition for Review. The petition for review shall be filed in the Appellate Court and shall specify the parties seeking review and shall designate the respondent and the order or part thereof to be reviewed. The agency and all other parties of record shall be named respondents." (134 Ill. 2d R. 335.)

Supreme Court Rule 335 also sets forth the appropriate caption for such a petition. This caption contains a place for the name of the administrative agency whose decision is being appealed as a party respondent. 134 Ill. 2d R. 335.

A petitioner seeking administrative review under Rule 335 must follow the procedures set forth in this rule. (See *Hardee's Food Systems, Inc. v. Human Rights Comm'n* (1987), 155 Ill. App. 3d 173, 507 N.E.2d 1300.) Here there is no question that petitioner failed to comply with the requirements of section 8—111(A)(1) of the Act and Supreme Court Rule 335 because he failed to name the Human Rights Commission as a party respondent. The question which presents itself is whether this failure deprives the court of its jurisdiction.

In *Lockett v. Chicago Police Board* (1990), 133 Ill. 2d 349, 549 N.E.2d 1266, the Illinois Supreme Court determined that the failure to join a necessary party under section 3—107, and within the 35-day time limit under section 3—103, of the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, pars. 3—107, 3—103 (now 735 ILCS 5/3—107, 3—103 (West 1992))) required dismissal of the appeal. In so holding, the court noted that the Administrative Review Law was a departure from common law and the procedures established therein "must be strictly adhered to in order to justify its application." (133 Ill. 2d at 353, 549 N.E.2d at 1268-69.) While the court stated that "[t]he requirement that a complaint be filed within the 35-day limit is jurisdictional" (133 Ill. 2d at 354, 549 N.E.2d at 1268), it also stated that a litigant could avoid dismissal upon showing "a good-faith effort to file the complaint and secure issuance of summons within

the 35 days" (133 Ill. 2d at 355, 549 N.E.2d at 1268). Since the appellee had not offered and the record did not disclose any evidence of a good-faith effort to comply with the requirements of the Administrative Review Law, the *Lockett* court held that the complaint for administrative review was properly dismissed.

There is some disagreement among the districts of the Illinois Appellate Court as to the applicability of *Lockett* to administrative review proceedings brought pursuant to Supreme Court Rule 335 as well as to its holding with respect to jurisdiction. The third district case of *Bailey v. Human Rights Comm'n* (1993), 247 Ill. App. 3d 853, 617 N.E.2d 1370, in reliance on *Lockett*, interpreted the procedural requirements of Supreme Court Rule 335 to be jurisdictional. While recognizing that *Lockett* interpreted sections of the Administrative Review Law and not Supreme Court Rule 335, it concluded that the same strict enforcement of procedural requirements was required for administrative review actions brought under either provision. (247 Ill. App. 3d at 856, 617 N.E.2d at 1372.) The court dismissed the appeal finding that it lacked jurisdiction because the petitioner failed to name the agency as a respondent.

In so holding, the *Bailey* court rejected the third district ruling in *McGaughy v. Human Rights Comm'n* (1993), 243 Ill. App. 3d 751, 612 N.E.2d 964, *appeal allowed* (1993), 152 Ill. 2d 562, 622 N.E.2d 1210, which held that *Lockett* did not apply to proceedings governed by Supreme Court Rule 335. *McGaughy* refused to dismiss the appeal on jurisdictional grounds despite the failure of the petitioner to name the departmental agency as a respondent. That court held that statutes giving the right to appeal are to be liberally construed and that "it would be inequitable to dismiss the petitioner's case for failure to name the Department as a respondent when the Commission itself did not name the Department as a respondent" in both of its orders (243 Ill. App. 3d at 755, 612 N.E.2d at 967).

In the first district, our court has rejected the conclusion reached in *Bailey v. Human Rights Comm'n* that failure to name a necessary party deprives the appellate court of jurisdiction. (*Parsons v. National R.R. Passenger Corp.* (1994), 259 Ill. App. 3d 85, 630 N.E.2d 1051.) In *Parsons*, the court agreed with the *Bailey* conclusion that, in accordance with *Lockett*, the Administrative Review Law and the Human Rights Act were departures from common law and that the procedures they establish must be strictly adhered to. The *Parsons* court disagreed, however, with the *Bailey* court's conclusion that *Lockett* held that the 35-day time limit for filing a complaint for administrative review was jurisdictional. *Parsons* cited to the *Lockett* court's characterization of the time limit as a mandatory requirement and

its holding that dismissal would not be required if the petitioner showed a good-faith effort to comply. (259 Ill. App. 3d at 87-88, 630 N.E.2d at 1053-54.) In *Parsons* the appeal was dismissed, though, because there was no showing of a good-faith effort to comply with the review requirements.

In *Environmental Control Systems, Inc. v. Pollution Control Board* (1994), 258 Ill. App. 3d 435, 630 N.E.2d 554, the fifth district also applied the good-faith effort test. While agreeing with the strict construction in *Bailey* and rejecting the liberal construction in *McGaughy*, the court nevertheless stated that the clear language of Supreme Court Rule 335 could be avoided if a good-faith effort to comply with the rule was shown. Under the facts before it, however, that court also found that there had not been a good-faith effort to comply because the petitioner did not seek to amend his petition until eight months after the administrative agency had issued its final order and four months after the agency filed its motion to dismiss for failure to name the county board as respondent.

■ We elect to follow our district court's decision in *Parsons* and the fifth district decision in *Environmental Control Systems, Inc.*, as well as their respective interpretations of *Lockett*. We believe that, in accordance with our supreme court's decision in *Lockett*, the requirement to name a necessary party, in this case the Human Rights Commission, is a mandatory requirement, the failure of which will not require dismissal if the petitioner has made a good-faith showing of compliance. We further believe that a good-faith showing was made in the instant case since the petitioner sought leave to amend his petition four days after the HRC filed its motion to dismiss and less than three months after the final order of the HRC was issued. Our conclusion in this regard also considers the fact that the petitioner has represented himself *pro se* in the proceedings before this court concerning the instant appeal.

Notwithstanding our determination that we have jurisdiction to proceed in this appeal, an issue presently awaiting the determination of our supreme court in *McGaughy*, we believe that the instant appeal must nevertheless fail on its merits. With respect to the merits, the petitioner argues that the Illinois Human Rights Commission erred in dismissing the City of Chicago as a party respondent. He argues that the City was the successor to the CCCCJC because: (1) the testimony contained in the affidavit attached to the City's motion to dismiss was contradicted by testimony at earlier public hearings; (2) the City performed some of the same functions as the CCCCJC; (3) fraud was present; and (4) the City should be estopped from denying that it is the successor of the CCCCJC where it withheld and con-

cealed information for over six years that the commission had been abolished three months after the discriminatory acts were charged. While petitioner's arguments are captioned in terms of successor issues, he also contends that the HRC erred in finding that the City and the CCCCJC were separate employers so that the timely filed charge against the CCCCJC did not operate as timely filed charge against the City.

Section 5300.660(a) of the Illinois Administrative Code (56 Ill. Adm. Code § 5300.660(a) (1991)) governs the issue amending a complaint to substitute or name additional parties respondent. That rule provides in relevant part:

"A Complaint may be amended by the Complainant to substitute or name additional Parties Respondent if such parties are successors or assigns of a named Respondent. *** A Person may be added as a Party Respondent, even if that Person is not a successor or an assign of the named Respondent, if the following terms and conditions are met:

1) The Charge in the case was filed within 180 days after the date of the civil rights violation allegedly committed by the Person sought to be added as a Party Respondent." (56 Ill. Adm. Code § 5300.660 (1991).)

Applying this rule, the HRC dismissed the City as a party respondent finding that the City could not be added as a successor or assign of the CCCCJC and, secondly, that the City could not be added as an additional party because a charge of discrimination by the City was not filed within 180 days after the alleged act of discrimination. For the reasons stated below, we affirm the HRC's order dismissing the City as a party respondent.

In accordance with section 5300.660(a) of the Illinois Administrative Code, a successor or assign of a named respondent can be substituted or named as an additional party at any time prior to final order. Successor liability for employment discrimination has been articulated by the Federal courts in the context of corporate successorship. In that context, successor liability has been imposed on nongovernmental entities when: (1) the successor has had prior notice of the claim against the predecessor; (2) the predecessor was able to provide the relief requested; and (3) there has been sufficient continuity in the business operations of the predecessor and the successor. (See *Wheeler v. Snyder Buick, Inc.* (7th Cir. 1986), 794 F.2d 1228, 1236.) The continuity element has been established by an examination of the following relevant factors: whether the same or substantially the same work force is used; whether the same or substantially the same supervisory personnel are used; and whether

the same jobs exist under substantially the same working conditions. (See *Wheeler*, 794 F.2d at 1236 & n.7 citing *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.* (6th Cir. 1974), 503 F.2d 1086.) These factors are relevant to any issue of successorship and are equally applicable to the instant case where successorship by a governmental entity is alleged and where that successorship is not premised upon an expressed statutory transfer of functions from one governmental entity to another. See *Mirza v. Department of the Treasury* (N.D. Ill. February 3, 1994), No. 93—C—3122, 1994 WL 30551 (act abolishing board directed substitution of successor-defendant).

In the instant case, the City argued in its motion to dismiss that it was not the successor or assign of the CCCCJC. In support of its motion, the City attached the affidavit of Margaret Leslie O'Connell, an employee of the CCCCJC from 1974 through 1982 and its director when it ceased operation in 1982. The relevant portions of that affidavit are as follows:

"3. The main function of the CCCCJC was to award federal anti-crime funds made available through passage of the federal Omnibus Crime Control and Safe Streets Act of 1968 to various private and government agencies. ***

4. The CCCCJC was almost entirely federally funded. (Applicants which were awarded grants, whether government agencies or private organizations, were required to provide a 5%-10% match; in addition, one of the CCCCJC's programs, The Juvenile [*sic*] Justice Planning grant, required a 50% City match; however, the funding for that program constituted only about one tenth of the CCCCJC's operating budget. The rest of the CCCCJC's budget was federal.) The federal funding passed through the state to the CCCCJC; the federal funding was not passed through the City of Chicago.

5. The day to day operations of the CCCCJC were not controlled by the City of Chicago[.] The CCCCJC was required to follow guidelines put out by the Illinois Law Enforcement Commission in its day to day operations. As Director of the CCCCJC, Affiant did not report to the Mayor of the City of Chicago, or the City Council, nor did Affiant attend cabinet or staff meetings of City officials; the Director of the CCCCJC reported to a Board of Commission *** which in turn reported to the Illinois Law Enforcement Commission, a state agency (also no longer in existence) authorized by the Omnibus Crime Control and Safe Streets Act of 1968. The Illinois Law Enforcement Commission had the final approval with respect to all grants ***.

6. The City of Chicago handled the payroll of the CCCCJC em-

ployees for administrative purposes, so payroll paperwork passed through the City's Department of Personnel. However, the Director of the CCCCJC had final authority with respect to personnel matters, including terminations. The Director selected her own work force and decided when to discharge employees. Terminations, hires and other personnel decisions did not require the approval of anyone in City government, and Affiant did not consult with anyone in City government when making personnel decisions. No City official was involved in the decision to suspend or discharge Robert Lipsey.

7. Federal funds to CCCCJC were terminated and the CCCCJC was dissolved on January 31, 1982 pursuant to federal law. With the cessation of federal funds, all functions of the agency stopped. The agency's reason for being, to award federal funds for law enforcement purposes, could not, of course, survive the loss of federal funding. The functions of the CCCCJC and the funds the CCCCJC had been receiving through the State were not transferred or assigned to nor were they assumed by, any other person, entity or organization.

8. When the CCCCJC disbanded in January, 1982, the City did not find or attempt to find CCCCJC employees jobs with the City."

In response to the City's motion to dismiss, the petitioner made numerous conclusory and unsupported allegations, including: (1) "the City wants to quibble over definitions" of successor and assign; (2) "Does the City when it has all the records, want us to trace the assets of the CCCCJC in the windup of its business[?] In its own affidavit, it says that the funds were intermingled"; (3) "Obviously, there is Criminal Grant money coming into the City from the Feds. Are we now going to get bogged down on the City's business affairs when the issue is the remedy to be applied in this case[?]"; and (4) "[W]e are not dealing with a corporation which has been bought out by another corporation. We are involved with a governmental agency *** that closed one of its Departments, functions (although that is highly doubtful), or subsidiary operations." The petitioner also attacked the credibility of the affiant alleging that she gave false testimony in the earlier substantive proceedings. (This allegation apparently was based on the fact that the appellate court, in the earlier appeal, found that the CCCCJC had discriminated against the petitioner and, in so doing, did not believe the testimony of the affiant or the other CCCCJC employees regarding the reason for petitioner's discharge. (But see Lipsey v. Human Rights Comm'n (1987), 157 Ill. App. 3d 1054, 1067, 510 N.E.2d 1226, 1234 (Lorenz, J., dissenting)).) Attached to the petitioner's pleading was a one-paragraph affidavit signed by his attorney which stated:

"[A]t the inception of this litigation he [affiant] was told by Marianne Parrillo and Robert Janega that they had been authorized by the County of Cook to represent them in this litigation, as the City was primarily responsible for the operation of the CCCCJC. I don't remember whether this representation was ever made on the record. I do remember that the statements were made in the presence of the ALJ."

The HRC found that there was no evidence to support a finding of successorship. The HRC relied on the affidavit of Margaret Leslie O'Connell which stated that the functions of the CCCCJC ceased in January of 1982. The HRC further held that the petitioner did not provide any evidence that the City was performing the functions of the CCCCJC or "that the employees of the CCCCJC were incorporated wholesale" into the City's work force.

Pursuant to section 8—106.1 of the Illinois Human Rights Act (Ill. Rev. Stat. 1989, ch. 68, par. 8—106.1 (now 775 ILCS 5/8—106.1 (West 1992))), a summary order may be granted pursuant to motion with or without supporting affidavits if there is no genuine issue as to any material fact and the moving party is entitled to a recommended order as a matter of law. Where the facts within an affidavit are not contradicted by counteraffidavit, they must be taken as true notwithstanding the existence of contrary unsupported allegations in the adverse party's pleadings. *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 272 N.E.2d 497; *Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 396 N.E.2d 34.

■ We find that the HRC's holding regarding successor liability was correct. When the HRC ruled on the City's motion to dismiss, the HRC had before it the City's motion and supporting affidavit from the last executive director of the CCCCJC and the petitioner's objection and counteraffidavit. We note that petitioner's response to the City's motion to dismiss was conclusory and contained numerous unsubstantiated allegations. Furthermore, petitioner's one-paragraph counteraffidavit contained hearsay that the affiant was told that "the City was primarily responsible for the operation of the CCCCJC." (See *Shapiro v. Regional Board of School Trustees* (1983), 116 Ill. App. 3d 397, 451 N.E.2d 1282 (administrative proceeding determination based on hearsay and unsupported by other competent evidence in record must be reversed).) This counteraffidavit also was ambiguous and at best seems to imply nothing more than that the City's counsel would be providing CCCCJC's defense just as the State's Attorney's office would be representing the County. Such an inference would not contradict the affidavit attached to the City's motion, and the uncon-

tradicted facts in that affidavit must be taken as true notwithstanding any of the contrary unsubstantiated allegations and conclusions in the Petitioner's pleadings. *Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 396 N.E.2d 34.

In addition to finding no successorship, the HRC also determined the City could not be added as an additional party because a valid charge of discrimination had not been filed against the City within 180 days of the alleged act of discrimination. In reaching this conclusion, the HRC expressly relied upon *Springfield-Sangamon County Regional Plan Comm'n v. Fair Employment Practices Comm'n* (1978), 71 Ill. 2d 61, 373 N.E.2d 1307 (hereinafter referred to as *Springfield-Sangamon*). The *Springfield-Sangamon* case was decided under section 8(c) of the Fair Employment Practices Act (Ill. Rev. Stat. 1967, ch. 48, par. 858(c)), the predecessor of the Human Rights Act (Ill. Rev. Stat. 1981, ch. 68, par. 1—101 *et seq.* (effective July 1, 1980) (now 775 ILCS 5/1—101 *et seq.* (West 1992))). *Springfield-Sangamon* held that section 8(c) provided a mandatory requirement that a complaint be filed within 180 days of the charge being filed and that, absent an agreement by the parties to waive the time limit, the Fair Employment Practices Commission would lose jurisdiction over complaints not yet filed and parties not yet added after the expiration of the 180-day period.[4]

While not brought to this court's attention by any of the parties to the instant appeal, we must take note of the fact that the supreme court's mandatory interpretation of the 180-day period for the filing of a complaint by the Commission was subsequently repudiated in *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 71 L. Ed. 2d 265, 102 S. Ct. 1148. As a result, the time-limitation requirements for the filing of a complaint under the Fair Employment Practices Act and under the subsequently enacted Human Rights Act are directory and not mandatory (*Wildwood Industries v. Illinois Human Rights Comm'n* (1991), 220 Ill. App. 3d 12, 580 N.E.2d 172 (time limits of section 7A—102(G) of the Human Rights Act (Ill. Rev. Stat. 1989, ch.

---

[4]The time period for filing a complaint under the Fair Employment Practices Act was extended in 1978 to 300 days from the date the charge of a civil rights violation was filed. (Pub. Act 80—1452, eff. September 16, 1978 (amending Ill. Rev. Stat. 1977, ch. 48, par. 858 (now 775 ILCS 5/7A—102(G) (West 1992))).) Thereafter, the Human Rights Act was amended to allow the aggrieved party to file a complaint when the Department of Human Rights has not, within the 300-day period, filed a complaint or ordered that no complaint be issued. Pub. Act 84—445, eff. September 16, 1985 (amending Ill. Rev. Stat. 1983, ch. 68, par. 7—102(G) (now 775 ILCS 5/7A—102(G) (West 1992))).

68, par. 7A—102(G) (now 775 ILCS 5/7A—102(G) (West 1992))) are directory); *Franks v. Tucker* (1985), 132 Ill. App. 3d 455, 476 N.E.2d 1315). This directory interpretation was required on procedural due process grounds and a belief that the aggrieved party should not lose his right to bring a discrimination action because of the Commission's failure to file a timely complaint.

The repudiation of *Springfield-Sangamon*'s jurisdictional conclusion does not, however, require a reversal of the HRC's decision because, as noted above, *Springfield-Sangamon* interpreted section 8(c) of the Fair Employment Practices Act (Ill. Rev. Stat. 1967, ch. 48, par. 858(c)) and the time provisions provided therein for the filing of a complaint at the sole initiative of the Commission. The decision in the instant case was controlled by another provision of section 8 of the Fair Employment Practices Act (Ill. Rev. Stat. 1977, ch. 48, par. 858 (now section 7A—102(A) of the Human Rights Act (775 ILCS 5/7A—102(A) (West 1992)))) that concerns the time within which the charge must be filed. Unlike the filing of a complaint, the aggrieved party always had the ability to insure the timely filing of the charge. (See Ill. Rev. Stat. 1977, ch. 48, par. 858 (Fair Employment Practices Act) (now section 7A—102(A) of the Human Rights Act (775 ILCS 5/7A—102(A) (West 1992))).) Thus the latter provision is not controlled by the rationale of *Logan* and that provision is and continues to be mandatory. *Faulkner-King v. Department of Human Rights* (1992), 225 Ill. App. 3d 784, 587 N.E.2d 599; *Robinson v. Human Rights Comm'n* (1990), 201 Ill. App. 3d 722, 559 N.E.2d 229; see *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 486 N.E.2d 893 (time requirements established as a condition precedent to right to seek remedy are jurisdictional); *cf. Pickering v. Human Rights Comm'n* (1986), 146 Ill. App. 3d 340, 496 N.E.2d 746 (equitable doctrine of estoppel can circumvent jurisdictional time limit for filing charge).

■ It appears from the face of the HRC's order that, despite a reliance on *Springfield-Sangamon*, the HRC dismissed the City because the petitioner had not filed a *charge* against the City within 180 days of the alleged act of discrimination and thus the City could not be added as an additional party in accordance with section 5300.660(a)(1) of the Illinois Administrative Code (56 Ill. Adm. Code § 5300.660(a)(1) (1991)). This dismissal of the City by the HRC, based on the absence of a timely filed charge against the City, was correct.

■ Finally, we also reject petitioner's arguments regarding fraud and estoppel based on the fraudulent concealment of information that the CCCCJC ceased operation. These arguments were not raised in the proceedings before the HRC, and we cannot consider arguments

raised for the first time on appeal. (*Robert S. Abbott Publishing Co. v. Annunzio* (1953), 414 Ill. 559, 112 N.E.2d 101; *Ron Smith Trucking, Inc. v. Illinois Commerce Comm'n* (1983), 114 Ill. App. 3d 636, 450 N.E.2d 1224.) Moreover, these arguments would fail on their merits because, as previously noted, the City did not conceal the fact that the CCCCJC had been abolished in 1982, and the petitioner had been informed of that fact as early as June 10, 1982.[5]

For the foregoing reasons, the order of the Human Rights Commission dismissing the City of Chicago as a party respondent is affirmed.

Order affirmed.

McNULTY and COUSINS, JJ., concur.

---

[5]See page one and footnote one of this opinion.