TROY PARHAM, Petitioner, v. MACOMB UNIT SCHOOL DISTRICT No. 185 *et al.*, Respondents.

Fourth District   No. 4—91—0484

Opinion filed June 29, 1992.

Allen J. Oehlert, of Deffenbaugh, Loewenstein, Hagen, Oehlert & Smith, P.C., of Springfield, for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Robert G. Toews, Assistant Attorney General, of Chicago, of counsel), for respondent Human Rights Commission.

Brian A. Braun and Megan Paisley, both of Miller, Tracy, Braun & Wilson, Ltd., of Monticello, for other respondent.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner's racial discrimination charges, filed with the Illinois Department of Human Rights (Department), were dismissed after investigation based on a lack of substantial evidence supporting the charges. (*In re Parham*, HRC No. 1986—CF—3524 (dismissal by Department, Aug. 21, 1990).) Petitioner requested review by the Human Rights Commission (Commission), which affirmed the dismissal. (*In re Parham* (Feb. 22, 1991), ____ Ill. Hum. Rights Comm'n Rep. ____ (HRC No. 1986—CF—3524).) A subsequent petition for rehearing before the entire Commission was denied. Petitioner then filed a petition for review of the Commission's order pursuant to section 8—111 of the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1989, ch. 68, par. 8—111) alleging (1) the Department failed to conduct a "full investigation"; (2) the Commission erred in finding the facts failed to support a *prima facie* case of race discrimination; and (3) a public employer violates the Act by dismissing an employee to satisfy the racially discriminatory demands of a community group. The Commission challenges this court's subject-matter jurisdiction, citing petitioner's failure to name the Commission and the Department as respondents within 35 days of the Commission's final order. See 134 Ill. 2d R. 335.

Petitioner Troy Parham was employed by respondent Macomb Unit School District No. 185 (Macomb) as a physical education teacher and as boys' varsity basketball coach beginning in the 1983-84 school year. He was released from his coaching duties on April 14, 1986, by the board of education of Macomb although he continued to be employed as a physical education teacher and was the only black faculty member of Macomb. The superintendent of Macomb listed three reasons in support of petitioner's dismissal: (1) failure to foster community satisfaction and support for the basketball program through effective community relations, (2) use of curses and other inappropriate and unsuitable language in the presence of students and fans, and (3) failure to provide guidance and establish relationships with members of his athletic teams.

Petitioner filed charges with the Department alleging (1) he was subjected to unequal conditions of employment and (2) his discharge was based on his race. The Department began an investigation of those charges in 1986 which did not conclude until August 21, 1990.

During the course of the investigation, the Department interviewed 10 witnesses, held an informal fact-finding conference attended by petitioner and Macomb, and filed a 17-page report, plus exhibits, summarizing the positions of Macomb and petitioner. The Department concluded there was a lack of substantial evidence that petitioner's dismissal was related to his race and a lack of substantial evidence that petitioner had been subjected to unequal terms and conditions of employment. The Department issued a notice of dismissal of the charges on August 21, 1990.

Pursuant to petitioner's request for review, and upon review of the Department's investigation report, the Commission affirmed the Department's dismissal, noting:

> "Complainant's allegations and facts do not support a prima facie case of race discrimination. The Complainant has failed to provide the Department with the necessary corroborating evidence or testimony to substantial [*sic*] his claim of unequal terms and conditions of employment, and discharge, based on race." *In re Parham* (Feb. 22, 1990), ___ Ill. Hum. Rights Comm'n Rep. at ___ (HRC No. 1986—CF—3524).

The Commission denied petitioner's petition for a rehearing and petitioner filed a petition for appellate review in this court, naming only Macomb as respondent. The Commission then filed a motion to dismiss for lack of jurisdiction pursuant to Supreme Court Rule 335. (134 Ill. 2d R. 335.) Petitioner filed objections to the motion as well as a motion for leave to amend to include the Department and the Commission as respondents. This court allowed the motion to amend the petition for review.

We address first the Commission's claim that failure to name the administrative agency as respondent in the petition for review is a jurisdictional defect barring review in this court. Section 8—111(A)(1) of the Act provides for direct appellate review of final orders of the Commission by the filing of a petition for review within 35 days of the Commission's order in accordance with Supreme Court Rule 335. (Ill. Rev. Stat. 1989, ch. 68, par. 8—111(A)(1).) Rule 335(a) provides "[t]he agency and all other parties of record shall be named respondents." (134 Ill. 2d R. 335(a).) Petitioner's original petition for review was not in compliance with Rule 335(a) for failure to name the Commission and the Department as respondents.

Based on analogy to cases interpreting sections 3—107 and 3—102 of the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, pars. 3—107, 3—102), the Commission contends failure to comply with the exact requirements of Supreme Court Rule 335(a) bars review in this

court. (See *Lockett v. Chicago Police Board* (1990), 133 Ill. 2d 349, 549 N.E.2d 1266; *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 486 N.E.2d 893; *Cuny v. Annunzio* (1952), 411 Ill. 613, 104 N.E.2d 780 (interpreting the Administrative Review Act (see Ill. Rev. Stat. 1945, ch. 110, pars. 264 through 279), the predecessor to the Administrative Review Law); *Winston v. Zoning Board of Appeals* (1950), 407 Ill. 588, 95 N.E.2d 864.) In *Lockett*, the court found the language of sections 3—107 and 3—102 of the Administrative Review Law to be clear and unambiguous in mandating all parties of record be named as defendants in an administrative review action, that administrative review law procedures must be strictly followed and the requirement of naming necessary party defendants was a mandatory jurisdictional prerequisite and could not be modified. *Lockett*, 133 Ill. 2d at 354, 549 N.E.2d at 1268.

Section 3—107 of the Administrative Review Law provides: "In any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants." (Ill. Rev. Stat. 1989, ch. 110, par. 3—107.) Section 3—102 of the Administrative Review Law provides: "Unless review is sought of an administrative decision within the time and in the manner herein provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision." (Ill. Rev. Stat. 1989, ch. 110, par. 3—102; see also *Lockett*, 133 Ill. 2d at 353, 549 N.E.2d at 1267.) The Commission concludes that based on the substantial similarity of language between Supreme Court Rule 335(a) and section 3—107 of the Administrative Review Law, *Lockett* controls on the question of subject-matter jurisdiction under Supreme Court Rule 335 and petitioner is barred from seeking direct appellate review for failure to name the Department and the Commission within 35 days of the Commission's order.

In construing provisions of Rule 335, the supreme court has determined the express incorporation of only sections 3—101, 3—108(c), 3—109, 3—110, and 3—111 of the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, pars. 3—101, 3—108(c), 3—109, 3—110, 3—111) excludes applicability of other provisions of that act. (*County of Cook, Cermak Health Services v. Illinois State Local Labor Relations Board* (1991), 144 Ill. 2d 326, 336, 579 N.E.2d 866, 871.) Therefore, the omission of sections 3—107 and 3—102 of the Administrative Review Law from the purview of Rule 335 precludes an application of the decisional analysis in *Lockett* to proceedings governed by provi-

sions of Rule 335 on the facts of this case. Moreover, section 3—102 of the Administrative Review Law is specific in barring judicial review except as provided therein. Rule 335, by contrast, contains no such specific bar and this court declines to give it such a construction on the facts of this case.

■ Here, we need not reach the question of whether failure to name the agency in the petition for review is a jurisdictional defect barring review pursuant to Rule 335(a). Supreme Court Rule 335(h)(1) (134 Ill. 2d R. 335(h)(1)) expressly incorporates other provisions of the rules, including Rule 303 (134 Ill. 2d R. 303), allowing for discretionary amendment of the notice of appeal on motion "filed in the reviewing court within 30 days after expiration of the time for filing a notice of appeal" (134 Ill. 2d R. 303(e)). (See *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.* (1985), 137 Ill. App. 3d 550, 484 N.E.2d 1178; *Getty Synthetic Fuels, Inc. v. Pollution Control Board* (1982), 104 Ill. App. 3d 285, 288-89, 432 N.E.2d 942, 945.) The petition for review serves the function of the notice of appeal. See 134 Ill. 2d R. 335, Committee Comments, at 293.

The Commission's final order was rendered June 3, 1991. Petitioner filed the petition for review with this court on July 3, 1991, within 35 days of the final order as required by section 8—111 of the Act. Thereafter, petitioner filed a motion in this court on August 6, 1991, to amend the petition for review by naming the Department and the Commission as party respondents, within 30 days after expiration of the time for filing the petition for review. This court allowed that amendment on August 12, 1991; therefore, any failure to comply with the jurisdictional requirements of Rule 335(a) was cured and the appeal is properly before this court.

On the merits, petitioner argues the Department failed to conduct a "full investigation of the allegations set forth in the charge." (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(C)(1).) In assessing this allegation, it may be useful to review the procedures governing the processing of claims under the Act, which are divided into two phases. The first phase involves the Department's investigation of the facts and allegations surrounding the filed charges including the interview of witnesses and examination of records or documents. (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102.) An investigator for the Department conducts an informal fact-finding conference to be attended by claimant and respondent. (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(C)(4).) A party may also supplement the record at any time while the investigation of the charge is pending. (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(B).) At the conclusion of the investigation, the investigator prepares a

written report summarizing the facts disclosed. If it is found after review of the investigative report that substantial evidence of a violation is lacking, the Department will dismiss the charge and notify the claimant that he may request review by the Commission. Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(D)(2)(a).

During the second phase of proceedings under the Act, the Commission reviews the Department's decision to dismiss the charges. Claimants are given another chance to submit additional supporting evidence and argument as a supplement to the request for review. (See Ill. Rev. Stat. 1989, ch. 68, par. 8—103(B).) At its discretion, the Commission may conduct a hearing on the factual basis for the dismissal. (Ill. Rev. Stat. 1989, ch. 68, par. 8—103(B).) If the Commission sustains the Department's action dismissing the charge, its decision is subject to judicial review in the appellate court. Ill. Rev. Stat. 1989, ch. 68, par. 8—111(A).

In this case, the Department conducted an informal conference with petitioner and members of Macomb, interviewed 10 witnesses, and prepared a 17-page report appending 112 pages of exhibits. On the basis of the investigation, the Department concluded there was a lack of substantial evidence of either unequal treatment or dismissal based on race discrimination. Nevertheless, petitioner points to the following omissions, which he characterizes as investigative deficiencies: (1) no contact had been made with a student manager who overheard unnamed team members indicate a racial motivation for petitioner's dismissal; (2) petitioner's coaching performance was evaluated by Macomb (and his signature appeared on the evaluation form) while some white coaches were not evaluated; (3) even though Macomb produced written evaluations for 10 different coaches for the period 1983-86, including four whom petitioner had named as receiving no evaluations, the Department failed to interview those coaches to determine why their signatures did not appear on the evaluation forms; (4) of the 24 separate parents who signed a list criticizing petitioner's coaching performance some (who are unidentified) were unaware the list was appended to a letter demanding petitioner's dismissal and these parents were not interviewed; (5) two students told the Department they felt race may have played a role in petitioner's dismissal and these statements were not investigated more fully (in fact, when questioned by the Department as to the basis of their statements neither student could provide any explanation or examples in support of his beliefs); (6) while petitioner admitted using inappropriate language, he asserted that all coaches did so and the Department failed to investigate two white coaches who used profanity and were not dis-

ciplined (in fact Macomb stated it was unaware of any use of profanity by other coaches as it had received no complaints naming other coaches); (7) a white community group critical of petitioner's coaching performance "co-opted" a black parent to "front" the group's opposition to petitioner and the investigation did not address this (in fact, when interviewed by the Department, the black parent denied he was pressured to be a spokesperson and stated that criticism of petitioner went to his failure to relate effectively to the players on his team and had nothing whatsoever to do with race); (8) petitioner was pressured to win two particular games while white coaches were not so pressured (a seemingly contradictory allegation is made that Macomb's denial of a link between a coaching contract and games won or lost defies "common sense"); (9) parents directed players on the team to rebuff petitioner's coaching efforts to make him appear deficient and this allegation was not investigated; and (10) the disparity between petitioner's status as a satisfactory teacher and an unsatisfactory coach never "made an impression" on the Department's investigation.

■ In cataloging the foregoing as deficiencies of the investigation (which essentially support Macomb's position that petitioner failed to foster community satisfaction and support of the basketball program through effective community relations), petitioner fails to set forth examples of how he was treated differently based on his race, the only basis upon which the Department and the Commission could assert jurisdiction. Petitioner apparently concludes speculation as to a racial motivation for his treatment and dismissal constitutes missing evidence the Department overlooked and was required to investigate exhaustively. However, inferences of fact based on imagination, speculation, and conjecture cannot stand as a matter of law (*Pioneer Life Insurance Co. v. Woodard* (1987), 152 Ill. App. 3d 236, 244, 504 N.E.2d 230, 236) and the Department is not required to disprove mere supposition.

The record indicates the Department fully investigated the facts as supplied by petitioner and Macomb. The fact petitioner does not concur with the result of that investigation is an insufficient basis for claiming the investigation itself was deficient. We find the Department fully investigated the verifiable facts tending to show the circumstances and causes of petitioner's dismissal as basketball coach, which resulted in a finding of a lack of substantial evidence of either unequal treatment or discharge based on his race.

Petitioner also claims the Commission erred in determining his allegations and facts did not support a *prima facie* case of race discrimination. We note initially that upon review by the Commission, peti-

tioner was not limited to the record before the Department but was given a second chance to submit new or additional evidence. (See Ill. Rev. Stat. 1989, ch. 68, par. 8—103.) He failed to do so and instead reargued his interpretation of the facts.

■ To establish a *prima facie* case of race discrimination, complainant must prove (1) he was a member of a racial minority; (2) he was qualified for the job he was performing; (3) he was satisfying the normal requirements of his work; (4) he was discharged; and (5) after his discharge the employer assigned an employee of another racial group to perform the same work. (*St. Mary of Nazareth Hospital Center v. Curtis* (1987), 163 Ill. App. 3d 566, 569, 516 N.E.2d 813, 815-16.) It is apparent the investigation produced substantial evidence of community dissatisfaction with petitioner's abilities and techniques as basketball coach and efforts were aimed at obtaining his dismissal. Petitioner admits that players on his team rebuffed his game strategies, which is evidence supporting Macomb's position, *i.e.*, petitioner failed to provide guidance and establish relationships with members of his athletic team. It seems evident that a high school athletic sports program would necessarily be dependent in large measure for its success on community and parental support. Under such circumstances, efforts to engender a cooperative relationship between the athletic faculty, players on the team, and members of the community interested in the sports program would constitute the normal requirements of employment in a coaching capacity. Therefore, an essential element of petitioner's *prima facie* case has not been shown.

We now address the standard of review to be applied when reviewing Commission orders affirming a dismissal of the charges based on the Department's investigative report in the absence of an adjudicatory proceeding.

■ Section 8—111(A)(2) of the Act provides that upon appellate review the Commission's findings of fact shall be sustained unless the court determines the findings are against the manifest weight of the evidence. (Ill. Rev. Stat. 1989, ch. 68, par. 8—111(A)(2).) When the Commission reviews "decisions of the Department to dismiss a charge" (Ill. Rev. Stat. 1989, ch. 68, par. 8—103(A)(1)), it may in its discretion conduct an evidentiary hearing on the charges (Ill. Rev. Stat. 1989, ch. 68, par. 8—103(B)). However, in the absence of such an adjudication, no "findings of fact" made by the Commission are subject to review. Rather, the issue for review is the Commission's exercise of its discretionary authority to dismiss the charges. Investigations conducted by administrative agencies attempt to discover and produce evidence not for the purpose of adjudicating guilt or proving

pending charges, but rather to serve as the basis for determining whether facts exist to justify instituting a complaint. (*Klein v. Fair Employment Practices Comm'n* (1975), 31 Ill. App. 3d 473, 483, 334 N.E.2d 370, 377.) In these instances, the scope of review is necessarily limited to determining whether the decision to dismiss the charge was an abuse of discretion.

In both *Klein* and *Sanders v. United Parcel Service* (1986), 142 Ill. App. 3d 362, 365, 491 N.E.2d 1314, 1317, the first district has determined that the Commission's dismissal of the charges based on an investigative report by the Department would be reversed only if the decision of dismissal was arbitrary, capricious or an abuse of discretion. We likewise conclude that the preliminary determination of whether facts exist to justify issuance of a complaint necessarily lies within the discretionary authority and expertise of the Commission and the Department and will not be disturbed by the reviewing court absent abuse of that discretion.

Although not cited by the parties, we note in *Moriearty v. Civil Service Comm'n* (1985), 131 Ill. App. 3d 198, 200-01, 474 N.E.2d 1291, 1294, this court rejected the more deferential "abuse of discretion" standard of review in reviewing a decision by the Civil Service Commission denying plaintiff's appeal of her layoff following a staff investigation. Citing the arbitrary and capricious standard applied to dismissal after an "investigation" in *Klein*, and the manifest weight standard applied to the dismissal of charges after "hearings" before a hearing examiner in *Unger v. Sirena Division of Consolidated Foods Corp.* (1978), 60 Ill. App. 3d 840, 377 N.E.2d 266, and reasoning that *Powell v. Jones* (1973), 56 Ill. 2d 70, 305 N.E.2d 166, equated a civil service commission "staff investigation" with a "stage in the hearing process," the *Moriearty* court deemed the manifest weight of the evidence test to be the appropriate standard of review. This court affirmed the decision of the agency utilizing "manifest weight of the evidence" as the scope of review. The instant case, by contrast, falls within that category of cases to which the *Klein* standard applies.

Under the statutory scheme in the matter now before this court, the Commission possesses the expertise and statutory discretion to determine whether dismissal following an investigation is warranted by the facts of the case or whether a basis exists for requiring an evidentiary hearing. Given the legislative grant of discretionary authority to the Department to dismiss a complaint following an investigation, which dismissal is subject to review by a panel of the Commission, we conclude the proper scope of review by this court is limited to determining whether the Commission's decision dismissing

774

the charges was an abuse of discretion. We find no abuse of discretion.

■ Last, petitioner suggests that a public employer, itself not racially motivated to discharge an employee but which is pressured by a community group to do so, should be held to have engaged in race discrimination. Inasmuch as petitioner has failed to produce any evidence that either Macomb or members of the community acted on the basis of petitioner's race in seeking his discharge, we need not comment on this theory.

The order of the Commission is affirmed.

Affirmed.

STEIGMANN and COOK, JJ., concur.