**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190280-U

Order filed April 14, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| ANDREA CANNON, | ) | Petition for Review of Order |
| | ) | of the Illinois Human Rights |
| Petitioner-Appellant, | ) | Commission dated April 11, |
| | ) | 2019. |
| v. | ) | |
| | ) | |
| ILLINOIS OF HUMAN RIGHTS | ) | Charge No. 2015SE1292 |
| COMMISSION, ILLINOIS DEPARTMENT | ) | |
| OF HUMAN RIGHTS, AND | ) | |
| SPRINT/UNITED MANAGEMENT CO., | ) | Appeal from a Decision of |
| | ) | the Illinois Human Rights |
| Respondents-Appellees. | ) | Commission. |

JUSTICE LYTTON delivered the judgment of the court.
Justices Daugherity and O'Brien concurred in the judgment.

**ORDER**

¶ 1  *Held*:  The Illinois Human Rights Commission did not abuse its discretion in sustaining the Illinois Department of Human Rights conclusion that petitioner's charge of discrimination lacked substantial evidence.

¶ 2  Petitioner, Andrea Cannon, appeals from a final order entered by the Human Rights Commission sustaining the Department of Human Right's dismissal of her charges of employment discrimination against her former employer, Sprint/United Management Company. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4          On September 11, 2014, petitioner filed a charge of discrimination with respondent alleging that her employer, Sprint, discharged her due to her race (black). Sprint hired petitioner as an indirect account executive. Her responsibilities included informing and training sales associates at outside vendors. Her role involved visiting stores and ensuring that signage, handouts, and product knowledge were current.

¶ 5          On August 5, 2015, the Department dismissed petitioner's claim that Sprint discharged her due to her race for lack of substantial evidence. The Department provided an investigation report summarizing the evidence it obtained. The Department interviewed five witnesses: petitioner, Melissa Baker (former supervisor), Dorie Sonley (human resources), Amalie Aguirre (supervisor), and Jennifer Hurley (coworker). The Report summarized the evidence as follows.

¶ 6          Petitioner's evidence alleged that in June 2013, she received a written warning by her then-manager Dave Arroyo for missing two expired pieces of signage during a mock audit of one of the stores in her territory. In December 2013, she received a final warning for telling a customer that "you're kinda acting like a brat." Petitioner appealed the final warning, which was reduced to a written warning.

¶ 7          Petitioner stated that in March 2014, Amalie Aguirre became her supervisor. Aguirre would accompany petitioner when she visited petitioner's stores. Petitioner alleged that Aguirre never found anything wrong with her stores. On June 14, 2014, Aguirre discharged petitioner for having expired posters in a store.

¶ 8          Petitioner alleged that other employees: Jennifer Hurley (white), Austin Sutton (white), Ashley Alwein (white), Elizabeth Morelos (Hispanic) and Angel Gomez (Puerto Rican) had not received written warnings for expired signage and discharged like petitioner.

¶ 9      Petitioner's coworker, Jennifer Hurley, stated that she was never written up for expired signage in one of her stores.

¶ 10     The Department summarized Sprint's evidence as follows. According to Dorie Sonley, a human resources representative for Sprint, in September 2012, petitioner had a coaching session with her then-supervisor, Dave Arroyo, in an attempt to improve petitioner's performance. Sonley stated that petitioner's performance did not improve; she received a written warning in June 2013 for failing to effectively audit one of the stores in her territory.

¶ 11     Baker, who took over supervision of petitioner in September of 2013, began hearing complaints from some of the dealers regarding the quality of petitioner's visits. In November 2013, Abdul Elijah e-mailed Baker to complain that he was offended by petitioner's behavior during a phone call in which she acted aggressively and called him a "brat." Baker met with petitioner on November 14, 2013, to address her concerns regarding the effectiveness of petitioner's store visits and Elijah's complaints. On December 12, 2013, she provided petitioner with a final written warning document and allowed petitioner to provide additional comments in response to the warning.

¶ 12     In response to the warning, petitioner e-mailed Sprint's director of prepaid sales and human resources to discuss her corrective action using Sprint's Open Door Review. Sonley met with petitioner to discuss her corrective action. As a result of the Open Door Review, Sprint reduced petitioner's final warning to a written warning.

¶ 13     Aguirre, who became petitioner's supervisor in March of 2014, stated that she began doing occasional ride-along visits with petitioner to track petitioner's performance. In May 2014, Aguirre learned that petitioner had failed to make several stores aware of new rate plans before petitioner left on vacation. As a result, the stores were selling old plans that would negatively impact

3

customers. Aguirre contacted petitioner and instructed her to immediately inform her stores to cease selling old plans and to make those stores aware of the new plans.

¶ 14    Aguirre made a routine unannounced visit to petitioner's territory to inspect four of her stores on May 21, 2014. Aguirre described the visits as "shocking." Petitioner had failed to address "serious placement and or training issues" at every store Aguirre visited. Three of the four stores lacked insurance handouts and employees were unaware of current insurance promotions and services. Three of the four stores had expired signage, two had employees that were unaware of pricing changes, and one contained a completely empty space where Sprint's signage should have been. Aguirre noted that one of the stores she inspected had been visited by petitioner an hour and a half before the review.

¶ 15    Aguirre met with the human resources department to discuss petitioner's performance. Aguirre believed that petitioner failed to improve her performance. Aguirre and the district manager then made the decision to discharge petitioner on June 13, 2014.

¶ 16    Sonley explained that petitioner used Sprint's Alternate Dispute Resolution Process to contest her discharge. Her discharge was upheld due to her job performance issues. Sonley explained that petitioner's comparatives Jennifer Hurley (white), Austin Sutton (white), and Elizabeth Morelos (Hispanic), were all indirect account executives who reported to Aguirre and Arroyo. Sonley indicated that none of these employees demonstrated the same chronic performance issues as petitioner. None of these employees received corrective actions for performance. However, in 2012 and 2013, three employees received correction action for their performance issues and all self-identified as race white.

¶ 17    Petitioner filed a request for review of the Department's dismissal with the Commission. The Department filed a response, which agreed with petitioner, and requested for the Department

to vacate the dismissal. Upon review of the petitioner's request, the Commission vacated respondent's dismissal and remanded the charge back to the Department for further investigation.

¶ 18　　　On June 27, 2016, the Department again dismissed petitioner's charge of discrimination for lack of substantial evidence. The Department created a new Report that included additional evidence from its investigation. The Department attempted to contact several other witnesses identified by petitioner. Those witnesses included: Ashley Alwein (coworker); Austin Sutton (coworker); Elizabeth Morelos (coworker); Dave Arroyo (former manager); Angel Gomez (manager), Jamal Zied (outside vendor); and Laura Ball (coworker). However, those witnesses either declined to comment, did not return the Department's call, or did not know petitioner.

¶ 19　　　Hurley did provide additional statements to the Department. Hurley stated that Aguirre had treated her "poorly" and referred to her as "white girl." Hurley recalled Aguirre making inappropriate comments to her at a Christmas party, but did not recall the substance of the comments. Hurley believed that Aguirre targeted petitioner but noted that Aguirre "did that to a lot of people."

¶ 20　　　In response to the Department's decision, petitioner filed a second request for review with the Commission. The Commission concluded that petitioner's claim lacked substantial evidence and the Commission sustained the Department's dismissal. Petitioner appeals.

¶ 21　　　　　　　　　　　　　　II. ANALYSIS

¶ 22　　　On appeal, petitioner does not contend that the Commission erred in finding her claim that Sprint discharged her based on her race lacked substantial evidence. In fact, she concedes that it lacked substantial evidence. Instead, she contends that the Commission abused its discretion in sustaining the dismissal of her charge because she believes the Department performed an inadequate investigation.

5

¶ 23    We review the decision of the Commission under an abuse of discretion standard. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under the abuse of discretion standard, this court should not disturb the Commission's decision unless it is arbitrary or capricious. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010). A decision is arbitrary or capricious if it contravenes legislative intent, fails to consider a critical aspect of the matter, or offers an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise. *LaSalle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 786 (2001). Under this standard, the court may not reweigh the evidence or substitute its judgment for that of the Commission. *Owens*, 403 Ill. App. 3d at 917. Abuse of discretion will be found where no reasonable person could agree with the position of the lower court. *Matthews v. Avalon Petroleum Co.*, 375 Ill. App. 3d 1, 9 (2007).

¶ 24    Petitioner claims the Commission abused its discretion in sustaining the dismissal of her charge for two reasons. First, she notes that the Department's investigation Report relied on exhibits, which were not included in the record. According to petitioner, the Commission failed to consider the evidence supporting of the Report. Petitioner's argument fails in that it is her burden to establish a *prima facie* case of discrimination. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79 (1989). The Illinois Human Rights Act (Act) (775 ILCS 5/1-101, *et seq*. (West 2018)) permits petitioner to submit additional evidence and argument to the Commission with the request for review. *Parham v. Macomb Unit School District No. 185*, 231 Ill. App. 3d 764, 770 (1992); 775 ILCS 5/8-103(B) (West 2018). Petitioner could have submitted the evidence she believed the Commission should have considered for its review. She did not do so. She cannot contend now that the Commission relied upon an incomplete record. See *Young*, 2012 IL App (1st) 112204, ¶ 50.

¶ 25 Petitioner's argument also fails as there is no requirement that the Department attach supporting evidence to its Report. On request for review, the Commission considers the Report, any argument or supplemental evidence, and the results of any additional investigation conducted by the Department in response to the request for review. 775 ILCS 5/8-103(B) (West 2014). When the Department opposes a request for review, the Act only requires it to submit to the Commission:

> "1) a copy of the Charge, including amendments.
>
> 2) the Department's investigation report.
>
> 3) results of additional DHR investigation, if any.
>
> 4) a statement of DHR's position, including proposed findings to support
>
> dismissal." 56 Ill. Admin. Code § 5300.430.

There is no requirement to include the full investigative file, or the exhibits referenced in the Department's report.

¶ 26 Petitioner's second claim that the Commission abused its discretion is based upon her belief that the Department failed to conduct a full investigation into her allegations. She points to several issues with the Department's Report that she believes established that the Department failed to conduct an adequate investigation. The Department fulfills its statutory duty to investigate a charge of discrimination when it investigates "the verifiable facts tending to show the circumstances and causes of petitioner's dismissal." See *Parham*, 231 Ill. App. 3d at 771; see also 775 ILCS 5/7A-102(C)(1) (West 2018).

¶ 27 We find the Department fully investigated the verifiable facts tending to show the circumstances and causes of petitioner's discharge, which resulted in a finding of a lack of substantial evidence of discharge based on her race. The Department interviewed petitioner, her former supervisors (Baker and Aguirre), her coworker (Hurley), and a human resources

7

representative (Sonley). The Department also obtained documentary evidence relevant to petitioner's discharge, including: (1) corrective actions on June 10, 2013, December 12, 2013, and January 10, 2014; (2) her response to the January 10, 2014, corrective action; (3) her job description; and (4) Sprint's dispute resolution and Open Door Review policies. This evidence showed that Sprint discharged petitioner for performance issues consistent with its progressive discipline policy. That "petitioner does not concur with the result of that investigation is an insufficient basis for claiming the investigation itself was deficient." *Parham*, 231 Ill. App. 3d at 771.

¶ 28    Nevertheless, petitioner claims that the Department should have made more attempts to contact additional witnesses including Alwein, Sutton, and Morelos to ascertain if they had any first-hand knowledge of whether she was discharged due to her race. As petitioner concedes, the Department did in fact attempt to contact these witnesses. The unwillingness of these witnesses to provide statements does not render the investigation insufficient.

¶ 29    In reaching this conclusion, we reject petitioner's claim that the Department should have compelled the uncooperative witnesses to speak with the Department by requesting subpoenas. Initially, we note that it is petitioner's burden to present substantial evidence supporting her charge of discrimination. See *Zaderaka*, 131 Ill. 2d at 178-79. While the Act authorizes the Department to request the issuance of subpoenas (775 ILCS 5/7A-102(C)(2) West 2018), it is not required to do so. *Chicago Transit Authority v. Illinois Department of Human Rights*, 169 Ill. App. 3d 749, 755 (1988). Furthermore, the Department's failure to interview all potential witnesses identified by the petitioner does not render the Department's investigation inadequate. See *Kalush v. Illinois Department of Human Rights Chief Legal Counsel*, 298 Ill. App. 3d 980, 990 (1998); *Parham*, 231 Ill. App. 3d at 770.

¶ 30　　　　Petitioner also contends that the Department's Report contained vague, conclusory, or hearsay statements that no other account executive had performance issues like petitioner. Petitioner further claims that the Department should have asked Hurley more questions about her interactions with Aguirre. The Department's Report is a summary of the evidence it obtained, not a detailed recitation of all information gathered during the course of its interviews. Also, the Report detailed how petitioner had a history of disciplinary action. By contrast, the other individuals did not receive corrective action because any incidents of expired signage in their stores were isolated. In other words, none of the other employees had the same chronic performance issues that petitioner demonstrated.

¶ 31　　　　Finally, we reject petitioner's claim that the Department's Report contained impermissible credibility findings. According to petitioner, because the Department's Report omitted her "extensive and fairly comprehensive statements regarding her job performance and the circumstances of her termination," the Department must have found that she lacked credibility. As noted, if petitioner believed that the Department failed to fairly present her statements in the Report, she could have submitted additional evidence along with her request for the Commission's review. See 775 ILCS 5/8-103(B) (West 2018).

¶ 32　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 33　　　　For the foregoing reasons, we affirm the decision of the Illinois Human Rights Commission.

¶ 34　　　　Decision affirmed.