NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230289-U

NO. 4-23-0289

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 18, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| DILLON WITT, | ) | Petition for Review of an |
|      Petitioner, | ) | Order of the Human |
|      v. | ) | Rights Commission |
| THE HUMAN RIGHTS COMMISSION, | ) | |
| THE DEPARTMENT OF HUMAN RIGHTS, and | ) | No. 22-0313 |
| WOODWARD, INC., | ) | |
|      Respondents. | ) | |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The Human Rights Commission did not abuse its discretion in sustaining the dismissal of the petitioner's charge of unlawful discrimination against his former employer.

¶ 2    Petitioner, Dillon Witt, filed a charge with the Department of Human Rights (Department) alleging unlawful discrimination by his former employer, Woodward, Inc. (Woodward). The Department dismissed the charge, and the Human Rights Commission (Commission) sustained the dismissal. Petitioner petitioned for review in this court, and we affirm the decision of the Commission.

¶ 3                                    I. BACKGROUND

¶ 4    Petitioner started working for Woodward in April 2015 as an associate machinist. He later became an operations technician. Woodward terminated petitioner's employment in February 2020, purportedly because he falsified records regarding his hours worked and violated

the company's overtime policy. On August 13, 2020, petitioner filed a charge with the Department alleging that Woodward discriminated against him because of his religion.

¶ 5        The Department dismissed petitioner's charge three times for lack of substantial evidence. Each time, petitioner requested that the Commission review the Department's decision, arguing, in part, that the Department's investigation was inadequate. The first two times before the Commission, the Department conceded the need for further investigation, and the Commission ordered remands. The Commission ordered the second remand over petitioner's objection. After the Department dismissed petitioner's charge the third time, the Department defended its conclusion that petitioner's claim lacked substantial evidence before the Commission. The Commission then sustained the Department's dismissal order. The following is a summary of the evidence presented to the Department and reviewed by the Commission.

¶ 6                        A. Petitioner's Religion

¶ 7        Petitioner is a Christian. He advised the Department that he used to participate in weekly Bible studies on Woodward's premises during his lunch breaks. There is no evidence in the record that anybody in a position of authority over petitioner ever said anything negative to him about his religion.

¶ 8         B. Petitioner's Disciplinary History and Performance Evaluation

¶ 9        Woodward required its employees to obtain authorization before working overtime. The written policy also stated, in relevant portion, "Overtime pay for non-exempt members will be at time-and-a-half regular (base) rate for any hours worked over twelve (12) hours in one (1) day or any hours over forty (40) hours in one (1) work week, whichever is greater." Woodward disciplined petitioner for violating the overtime policy in April 2019 and July 2019. The documents relating to this discipline are not in the record. However, the record contains petitioner's statement

that Woodward gave him a written warning in April 2019 for working overtime on two Saturday mornings after he was unable to get a clear answer from supervisors as to whether he was needed those days. Petitioner also indicated he received "decision day" discipline in July 2019 when he failed to record his time catching up on work before his scheduled shifts. Evidently, "decision day" discipline is Woodward's final warning to an employee. On July 26, 2019, petitioner signed a document for Woodward promising that he (1) would not work overtime without prior approval, (2) would do his best to ensure his time was recorded accurately, and (3) would arrive early but not work until his designated start time. This document is not in the record but was referenced in the addendum to the Department's investigation report.

¶ 10 According to petitioner, a supervisor at Woodward told him on an unspecified date, " 'You are a tremendous asset to this company. Your work is impeccable.' " However, petitioner's 2019 annual performance evaluation stated he needed improvement and did not meet expectations. This evaluation also does not appear in the record but was referenced in the Department's investigation report.

¶ 11 C. Petitioner's Termination

¶ 12 In February 2020, petitioner's supervisor was Joshua Wiesneth, a self-identified Christian. (Wiesneth's name is spelled "Wiseneth" in some places in the record.) On February 13, 2020, petitioner asked Wiesneth for permission to take off work from February 14 through 17 to attend a retreat. According to petitioner, he expressly told Wiesneth this was a religious retreat. Wiesneth denied that petitioner mentioned this was a religious outing and denied knowing petitioner's religion. At any rate, according to petitioner, Wiesneth told him to " 'have fun' " on the retreat. Petitioner attended this retreat with a coworker.

¶ 13　　　　　On the morning of February 17, 2020, Wiesneth sent petitioner an e-mail with the subject "[u]nauthorized overtime." Wiesneth questioned why petitioner had "clocked in at 4:58 a.m." on February 12, 2020, for a shift starting at 6:42 a.m. Wiesneth included in this e-mail a chart reflecting that petitioner's "Time In" on February 12 was "4:58" and his "Time Out" was "15:21." When petitioner returned to work on February 18, 2020, he responded to Wiesneth's e-mail as follows: "Early arrival, did not start work until 6:42 AM."

¶ 14　　　　　On February 19, 2020, Melissa Toms, a member of Woodward's human resources department, told petitioner he was being suspended from his employment. (Toms was "on leave" from Woodward during the Department's subsequent investigation of petitioner's discrimination claim, and her religious affiliation is listed in the record as "unknown.") Wiesneth was present for that conversation. On February 20, 2020, Pat Bondick—Woodward's human resources manager and a self-identified Christian—informed petitioner by telephone that Woodward was terminating his employment. Wiesneth was also on that phone call. There is no indication in the record that Woodward disciplined or fired the coworker who attended the religious retreat with petitioner.

¶ 15　　　　　According to Woodward, petitioner began working approximately 30 minutes before his designated shift on February 12, 2020. Woodward paid petitioner "regular pay" (as opposed to time-and-a-half pay) for 8½ hours of work on February 12, 2020. Petitioner acknowledged to the Department that he arrived at Woodward's facilities early on February 12, 2020, but he insisted he did not begin working until his shift started. According to petitioner, he read in Woodward's atrium area before arriving at his department at 6:15 a.m. Petitioner told the Department, "I knew that I was not supposed to begin working until my 6:42 a.m. start time, so I stood there for a long time, waiting for the clock to show that it was 6:42 a.m."

- 4 -

¶ 16 The record contains no direct proof substantiating either side's position as to whether petitioner performed work before 6:42 a.m. on February 12, 2020. The Department's investigation report says that Woodward's "investigation revealed that Complainant began working before the start of his shift," and the report refers to an "Exhibit H." The report identifies exhibit H as notes attendant to Woodward's interview of petitioner on February 18, 2020. However, exhibit H is not included in the record.

¶ 17 D. Petitioner's Claim for Unemployment Benefits

¶ 18 When petitioner filed for unemployment benefits, Woodward challenged the claim on the basis that petitioner committed misconduct. In May 2020, an administrative law judge (ALJ) with the Illinois Department of Employment Security rejected Woodward's challenge. The ALJ determined that although petitioner arrived at work at 4:58 a.m. on February 12, 2020, and reported early to his workstation in "full personal protection equipment," he did not log into his computer and start working before 6:42 a.m.

¶ 19 E. Petitioner's Allegations

¶ 20 Petitioner told the Department it was common for Woodward employees in his department to start working before scheduled shift times and that nobody else was disciplined for such practices. Petitioner provided the Department with names of coworkers he believed would support his allegations. Petitioner emphasized that one coworker, who purportedly was Buddhist, sometimes started working before designated shifts and was never disciplined.

¶ 21 The Department was unable to contact many of the individuals petitioner identified as witnesses, including petitioner's Buddhist coworker. However, the Buddhist coworker's disciplinary record showed he was disciplined only once, which was for issues unrelated to Woodward's overtime policy. Other people petitioner claimed would support his position either

were unwilling to participate in the Department's investigation or gave statements that did not support petitioner's claim of religious discrimination.

¶ 22                    F. Woodward's Response to Petitioner's Allegations

¶ 23        Wiesneth indicated that Woodward followed its progressive discipline policy and terminated petitioner's employment based on his disciplinary history. According to Wiesneth, there were no other employees under his supervision who violated the overtime policy. Bondick echoed Wiesneth's statements. Bondick added that she was unaware petitioner had requested time off of work shortly before Woodward terminated his employment. According to Bondick, it was not a problem for employees to come in early. However, she stated it violated Woodward's policy for a person to be in one's work area early while wearing protective equipment and "touching equipment."

¶ 24        G. Woodward's Discipline of Other Employees for Similar Violations

¶ 25        Woodward purportedly produced to the Department documents showing that between June 4, 2018, and September 4, 2019, Woodward terminated the employment of four individuals "for similar violation[s]." Woodward was unaware of the religious affiliations of those individuals, and no documents pertaining to those individuals are included in the record.

¶ 26        Additionally, in December 2018, Woodward issued a written warning to an employee for "57 instances where he had entered an entire day's labor well before his shift ended (between 30 minutes and 3 hours)." This employee had not been disciplined within the preceding year, and the corrective action report in the record indicates he would face further discipline up to and including termination if this problem continued. The record does not disclose this individual's religious affiliation.

¶ 27    On February 20, 2020, Woodward issued written warnings to three other employees for falsifying records by being nonproductive during overtime work hours. Two of those employees also purportedly left their department for 10 minutes while not on their break or meal periods. None of those employees had been disciplined within the preceding year. The record does not disclose these individuals' religious affiliations.

¶ 28                              H. The Commission's Decision

¶ 29    On February 28, 2023, the Commission sustained the Department's third dismissal of petitioner's charge for lack of substantial evidence. The Commission noted that to establish a *prima facie* case of discrimination, petitioner must show that "(1) he is a member of a protected class, (2) he was performing his job satisfactorily, (3) he was subjected to an adverse action, and (4) the employer treated a similarly situated employee outside his protected class more favorably under similar circumstances." The Commission further explained that if petitioner established a *prima facie* case, Woodward could rebut that presumption of discrimination "by articulating a legitimate, nondiscriminatory reason for its decision," and petitioner would then have to show that this articulated reason was pretextual.

¶ 30    The Commission determined that petitioner's claim failed because (1) "he was not performing his job satisfactorily, as evidenced by his performance evaluation and prior disciplines," (2) "he did not identify a non-Christian, similarly situated employee who was not discharged under similar circumstances," and (3) he did not "provide any other evidence that would create the inference that the basis for his discharge was discriminatory." In the Commission's view, petitioner's Buddhist coworker was not similarly situated to petitioner, as they had different evaluations and disciplinary records. With respect to other individuals petitioner claimed started shifts early, the Commission found that Woodward's "allegedly dissimilar

treatment of them would not create an inference of discrimination," as petitioner "did not know whether they were outside his protected class." The Commission also found petitioner's allegation had "little evidentiary value," as he did not provide dates or descriptions of other individuals working unauthorized overtime without being disciplined.

¶ 31　　　　The Commission further determined that even had petitioner made a *prima facie* case of religious discrimination, Woodward "articulated a legitimate, nondiscriminatory reason for discharging him, which was that he was on a final warning after prior instances of unauthorized overtime and then on February 12, 2020, worked overtime without authorization." The Commission did not deem Woodward's proffered explanation pretextual.

¶ 32　　　　The Commission recognized that petitioner claimed he did not start working until his designated shift time on February 12, 2020, and he "did not get paid." However, to the extent petitioner relied on findings of fact made in connection with his claim for unemployment benefits, the Commission noted that such findings were not binding on the Commission. See 820 ILCS 405/1900(B) (West 2022) (establishing that findings of fact made to adjudicate claims for unemployment benefits are neither admissible nor binding in any other action). The Commission added that Woodward was "entitled to make employment decisions based on its reasonable belief of facts surrounding the situation."

¶ 33　　　　The Commission further mentioned that Woodward "provided evidence that [petitioner] acknowledged that he had violated its overtime policy in July 2019 and was on a final warning; that [petitioner] violated the overtime policy on Feb[ruary] 12, 2020; and that it had discharged four other employees for the same violation." Addressing petitioner's grievances about the sufficiency of the Department's investigation, the Commission noted that the Department attempted to contact all the witnesses petitioner had identified. The Commission also said that

petitioner, not the Department, bore the burden of establishing substantial evidence of discrimination.

¶ 34    Petitioner filed with this court a timely petition seeking review of the Commission's decision. See 775 ILCS 5/8-111(B)(1) (West 2022) (authorizing the appellate court to review the Commission's final orders); Ill. S. Ct. R. 335(a) (eff. July 1, 2017) (providing that an aggrieved party may file a petition for review within 35 days after receiving the order or decision).

¶ 35                              II. ANALYSIS

¶ 36    Petitioner argues that the Commission's decision was arbitrary and capricious because he made a *prima facie* case of religious discrimination and Woodward's articulated basis for terminating his employment was pretextual. The Commission and Woodward respond that petitioner did not make a *prima facie* case of religious discrimination, as he failed to provide substantial evidence that he was meeting Woodward's legitimate expectations and was treated less favorably than similarly situated employees outside of his protected class. According to the Commission and Woodward, even if petitioner made a *prima facie* showing of religious discrimination, there was not substantial evidence that Woodward's proffered reason for discharging petitioner was pretextual.

¶ 37              A. The Sufficiency of the Department's Investigation

¶ 38    We must address a preliminary matter. In presenting his arguments, petitioner contends that the Department failed to conduct an adequate investigation into his claim that Woodward treated him differently than it treated his Buddhist coworker. The record shows that the Department procured this coworker's disciplinary records and attempted to interview him, but he did not contact the Department. Many other potential witnesses petitioner identified likewise either did not respond to the Department or expressly declined to be interviewed. Nevertheless,

petitioner emphasizes that when he sought review by the Commission of the Department's first two orders dismissing his charge, the Department conceded the need for further investigation regarding specific matters. Petitioner criticizes the Department for failing to do some of the things it had said would be necessary to its investigation, including ascertaining how petitioner knew that his Buddhist coworker worked unauthorized overtime and obtaining that coworker's time records.

¶ 39 In support of his criticism of the Department's investigation, petitioner cites only *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, which did not address the sufficiency of an administrative investigation. Moreover, petitioner complains in part that the Department failed to elicit information *from him* as to how he knew his Buddhist coworker worked unauthorized overtime. This is not a proper basis to criticize the Department's investigation. Petitioner could have presented any additional information within his own knowledge when he challenged the Department's dismissal orders before the Commission. See 775 ILCS 5/8-103(b) (West 2022) (authorizing the Commission to consider timely submitted "supplemental evidence" when reviewing a dismissal order entered by the Department); *Parham v. Macomb Unit School District No. 185*, 231 Ill. App. 3d 764, 772 (1992) (noting that the petitioner failed to avail himself of his "second chance to submit new or additional evidence" before the Commission).

¶ 40 Petitioner also argues the Department should have investigated his Buddhist coworker's time records. "[I]t is up to the Commission to determine the sufficiency of the Department's investigation." *Gayle v. Human Rights Comm'n*, 218 Ill. App. 3d 109, 115 (1991). Here, the Commission rejected petitioner's contention that the Department's investigation was inadequate. We review that finding for an abuse of discretion. See *Kalush v. Illinois Department of Human Rights Chief Legal Counsel*, 298 Ill. App. 3d 980, 990 (1998) ("Based upon the record before us, we cannot say that the Chief Legal Counsel's decision to forego [*sic*] further

investigation, and the implicit finding thereby that the Department's investigation was sufficient, was an abuse of discretion.").

¶ 41     We discern no abuse of discretion. After the Department dismissed petitioner's charge the second time, the Department proposed that a second remand was necessary for additional investigation. Petitioner *opposed* that request for a remand, but the Commission ordered it. After the Department dismissed petitioner's charge the third time, petitioner complained to the Commission about the sufficiency of the Department's investigation, but he did not request a remand for further investigation. Before this court, petitioner likewise does not specifically request a remand for further investigation of his charge. Instead, petitioner's prayer for relief is for us to "(1) vacate the decision and remand the matter to the Commission with directions to remand to the Department for a finding sustaining [petitioner's] charge; and (2) grant such other and further relief as may be just under the circumstances." Indeed, petitioner's contention before both the Commission and this court is that he presented substantial evidence of religious discrimination *despite* the Department's purportedly inadequate investigation. Under these circumstances, we cannot say it was an abuse of discretion for the Commission to address the merits of petitioner's religious discrimination claim rather than remand the matter a third time for further investigation.

¶ 42     B. Whether There Is Substantial Evidence of Religious Discrimination

¶ 43     The Illinois Human Rights Act prohibits discrimination in employment based on religion. 775 ILCS 5/1-103(Q) (West 2022); *Robinson v. Village of Oak Park*, 2013 IL App (1st) 121220, ¶ 3. A party who believes he or she was subjected to unlawful discrimination may file a charge with the Department. 775 ILCS 5/7A-102(A)(1) (West 2022). After investigating the allegations, the Department determines whether there is "substantial evidence that the alleged civil rights violation has been committed." 775 ILCS 5/7A-102(D)(2) (West 2022). "Substantial

evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2022). If the Department dismisses a charge for lack of substantial evidence, a petitioner may request the Commission to review that decision. 775 ILCS 5/7A-102(D)(3) (West 2022). If the Commission sustains the dismissal, a petitioner may seek further review by the Illinois Appellate Court. 775 ILCS 5/8-111(B)(1) (West 2022).

¶ 44    We review the Commission's decision, not the Department's. *Spencer v. Illinois Human Rights Comm'n*, 2021 IL App (1st) 170026, ¶ 31. We must accept the Commission's findings of fact unless such findings are against the manifest weight of the evidence. 775 ILCS 5/8-111(B)(2) (West 2022). We review for an abuse of discretion the Commission's conclusion that there was not substantial evidence supporting petitioner's charge. *Spencer*, 2021 IL App (1st) 170026, ¶ 32.

> "Under this standard, we will not disturb the Commission's decision unless it is arbitrary or capricious, meaning that 'it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise.' " *Spencer*, 2021 IL App (1st) 170026, ¶ 32 (quoting *Young*, 2012 IL App (1st) 112204, ¶ 33).

¶ 45    In reviewing employment discrimination claims, Illinois courts frequently invoke the framework articulated in *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172 (1989), which was adopted from federal law. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). The petitioner first must "establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination." *Zaderaka*, 131 Ill. 2d at 179. Generally, a *prima facie* case

requires evidence that the petitioner (1) belonged to a protected class, (2) met his or her employer's legitimate employment expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than a similarly situated person outside of the protected class. *Lau v. Abbott Laboratories*, 2019 IL App (2d) 180456, ¶ 40. If the petitioner establishes a *prima facie* case of discrimination, there is a rebuttable presumption that the employer unlawfully discriminated against the petitioner. *Zaderaka*, 131 Ill. 2d at 179. The employer rebuts that presumption by articulating—not proving—"a legitimate, nondiscriminatory reason for its decision." *Zaderaka*, 131 Ill. 2d at 179. If the employer rebuts the presumption, the petitioner "must then prove by a preponderance of the evidence that the employer's articulated reason was not its true reason, but was instead a pretext for unlawful discrimination." *Zaderaka*, 131 Ill. 2d at 179. This last step merges with the petitioner's ultimate burden of persuading the trier of fact that the employer unlawfully discriminated against him or her. *Zaderaka*, 131 Ill. 2d at 179.

¶ 46 Here, the parties initially dispute whether petitioner satisfied the second and fourth requirements to establish a *prima facie* case of religious discrimination. We need not address those issues. Even assuming petitioner established a *prima facie* case of religious discrimination, there is no dispute that Woodward articulated a legitimate, nondiscriminatory reason for terminating petitioner's employment: he allegedly violated Woodward's overtime policy on February 12, 2020, after having twice been disciplined in the past year for the same conduct. The Commission determined that Woodward's proffered reason was not pretextual. For the following reasons, the evidence strongly supported that conclusion. Thus, petitioner's request for review in this court fails.

¶ 47 " ' "[P]retext" means deceit used to cover one's tracks.' " *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 730 (7th Cir. 2001) (quoting *Kulumani v. Blue Cross Blue Shield Ass'n*, 224

F.3d 681, 685 (7th Cir. 2000)). In evaluating whether an employer's explanation is pretextual, courts do not consider whether the employer's decision was correct as a matter of business judgment. *Atanus v. Perry*, 520 F.3d 662, 674 (7th Cir. 2008). Additionally, "the unfairness or unreasonableness of an employer's conduct is irrelevant, so long as it was not motivated by an employee's protected characteristic." *Young*, 2012 IL App (1st) 112204, ¶ 48. In other words, " 'the pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate.' " *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 727 (7th Cir. 2005) (quoting *Helland v. South Bend Community School Corp.*, 93 F.3d 327, 330 (7th Cir. 1996)).

¶ 48    It is often stated in caselaw that to prove pretext, a petitioner must show that: "(1) the articulated reason has no basis in fact; (2) the articulated reason did not actually motivate the employer's decision; or (3) the articulated reason was insufficient to motivate the employer's decision." *Sola v. Illinois Human Rights Comm'n*, 316 Ill. App. 3d 528, 537 (2000). The Seventh Circuit Court of Appeals has recognized the "potential for confusion" with this language. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006). Properly understood, the *only* concern when evaluating pretext is whether the employer honestly believed the reason it articulated for discharging an employee. *Forrester*, 453 F.3d at 419. Even if the employer's proffered reason has no basis in fact, there is no pretext so long as the stated reason was "the actual motive for the employer's action." *Forrester*, 453 F.3d at 419. As an example:

> "Suppose the complaint of sexual harassment in this case had been a pure fabrication, with 'no basis in fact' whatsoever—yet it was believed by the employer and it was that belief and nothing else that caused him to fire the plaintiff. There would be nothing pretextual about his action. A pretext, to repeat, is a deliberate falsehood." *Forrester*, 453 F.3d at 419.

Accordingly, our concern here is not whether the record supports a finding that petitioner started working before his scheduled shift on February 12, 2020. Rather, the dipositive question is whether Woodward terminated petitioner's employment based on his religion or because Woodward honestly believed he started working before his designated shift on February 12, 2020.

¶ 49 With that understanding, we note that the parties do not dispute the following facts. Woodward prohibited employees from working outside of their designated shifts without prior authorization. Petitioner was aware of that policy, as Woodward disciplined him for violating it in both April 2019 and July 2019. The July 2019 violation resulted in a "decision day" discipline, which is a final warning. On February 12, 2020—shortly before petitioner requested and was granted permission to miss a few days of work for a retreat—petitioner arrived at Woodward's facilities at 4:58 a.m. for a shift that started at 6:42 a.m. Petitioner admittedly then arrived at his department that day around 6:15 a.m.

¶ 50 Petitioner argues in his reply brief that the dismissal of his charge rests on improperly crediting Woodward's witnesses over his own statements as to whether he started working early on February 12, 2020. See 56 Ill. Adm. Code 2520.430(f) (2007) (providing that the Department may not rely on or make credibility determinations unless the parties are allowed to confront and cross-examine witnesses). However, the Commission never made an express credibility determination. Rather, the Commission correctly noted that Woodward was "entitled to make employment decisions based on its reasonable belief of facts surrounding the situation." In any event, as we have explained, for purposes of evaluating whether Woodward offered a pretextual reason for terminating petitioner's employment, it does not matter whether petitioner actually worked before 6:42 a.m. on February 12, 2020.

¶ 51     There is scant evidence in the record supporting petitioner's argument that Woodward terminated his employment because of his religion. Petitioner did not present evidence of an anti-Christian culture at Woodward or that a supervisor said something negative to him about his religion. Petitioner proposes that Woodward's "suspicious timing" in terminating his employment shortly after he returned from a religious retreat is evidence of pretext. However, the facts very strongly support the conclusion that petitioner's termination had nothing to do with either the retreat or his religion. According to petitioner, Wiesneth told him to " 'have fun' " on the retreat. Woodward did not discipline or fire the coworker who attended the retreat with petitioner. Wiesneth and Bondick, who were both involved with terminating petitioner's employment, were self-identified Christians. There was also evidence that Woodward had relatively recently discharged four employees for a "similar violation" to the one that resulted in petitioner's termination. Under these circumstances, the timing of Woodward terminating petitioner's employment does not give rise to suspicion that Woodward discriminated against petitioner based on his religion.

¶ 52     As a further indication of pretext, petitioner mentions that Woodward paid him for 8½ hours of work on February 12, 2020, at his regular rate of pay rather than at his time-and-a-half overtime rate. However, the fact that Woodward paid petitioner for more than eight hours of work suggests in itself that Woodward believed petitioner performed work before the start of his shift. Additionally, Woodward's overtime policy reserved time-and-a-half pay for situations where an employee works more than 12 hours in a day or more than 40 hours in a week. There is no indication that petitioner worked more than 40 hours during the week in question, as he was on a retreat for part of that week. Thus, there is nothing suspicious in Woodward paying petitioner for an extra half hour of work at his base rate of pay.

¶ 53        As further evidence of pretext, petitioner contends that Woodward's proffered reason for terminating his employment changed over time. The record does not support that contention. The record shows that Woodward consistently maintained it discharged petitioner for starting work early on February 12, 2020—not merely because petitioner arrived at Woodward's facilities early that day. We note that petitioner told the Department that his February 19, 2020, corrective action report—which is not in the record—accused him of working before the start of his shift on February 12. The record also supports a conclusion that Woodward's references to petitioner falsifying time records was not a distinct proffered reason for terminating petitioner's employment, but rather was another way of saying that petitioner worked outside his designated shift without recording his time.

¶ 54        Petitioner cites *Irick v. Illinois Human Rights Comm'n*, 311 Ill. App. 3d 929, 936 (2000), for the proposition that an employer's proffered reason may be deemed pretextual where "there was an insufficient investigation into the articulated reason for discharge, the petitioner did not receive a hearing regarding his discharge, *or* the petitioner did not receive an opportunity to present evidence or an explanation of his version." (Emphasis added.) *Irick* actually used the word "and" not "or." *Irick*, 311 Ill. App. 3d at 936. Although Woodward did not give petitioner a hearing before terminating his employment, Woodward's policies did not require a hearing. Additionally, there is no evidence in the record that Woodward's internal investigation into the events of February 12, 2020, was insufficient. Petitioner also had the opportunity to explain himself before Woodward terminated his employment. This case is unlike *Irick*, where the employer's investigation into sexual harassment allegations against the petitioner was so cursory that the employer failed to discover "obvious facts" about the situation. *Irick*, 311 Ill. App. 3d at 937. The

employer's decision to fire the petitioner in *Irick* was also suspicious, as the petitioner's supervisor had made disparaging comments about the petitioner's age and sex. *Irick*, 311 Ill. App. 3d at 931.

¶ 55　　　The record supports the Commission's determination that Woodward's proffered reason for terminating petitioner's employment was not pretextual. Accordingly, the Commission did not abuse its discretion by sustaining the Department's order dismissing the charge for lack of substantial evidence.

¶ 56　　　　　　　　　　　III. CONCLUSION

¶ 57　　　For the reasons stated, we affirm the Commission's order.

¶ 58　　　Affirmed.